(13 Misc. Rep. 281.)

### GRISWOLD et al. v. LITTLE.

(Circuit Court, Kings County. April 29, 1895.)

1. VENDOR AND PURCHASER—PAYMENT OF PURCHASE MONEY—EVIDENCE.

Where a purchaser is put in possession of the land by the terms of the contract, and has been in possession for more than 30 years, a map bearing his name as the owner of the property, and an agreement between him and others for a right of way across the premises, and a deed by the vendor describing adjoining land as bounded by property of the purchaser, are not evidence of the payment of the purchase price of such land, or of delivery of a deed.

2. SAME—IMPROVEMENTS BY PURCHASER.

Where a purchaser, by the terms of the contract, is given immediate possession of the land, the purchase money to be paid two years after the making of the contract, the fact that he made large expenditures for buildings and other improvements is not evidence of the payment of the purchase money.

3. SAME—PRESUMPTION OF TITLE.

Where a purchaser enters into possession of land under his contract of purchase, he is presumed to hold in subordination of the vendor's title until some hostile act is shown.

Action by Isabella S. Griswold and another against Mary E. Little. Judgment for plaintiffs.

The action was brought to recover possession of an acre and three-quarters of land at Bay Ridge, in the county of Queens. At the trial the following facts appear: In 1854 one Zachariah Griswold died intestate and seised of the premises in suit. His heirs were his four children and the son of a deceased child. On June 13, 1856, the Griswold heirs made a contract of sale with Charles H. Little, by which they agreed to sell the property in question for

$2,540. The price was payable $100 down, $440 and interest on $2,440 in cash on the delivery of the deed, and a mortgage for $2,000. It was agreed that the vendors would, "at some time within two years from the date hereof [said time to be at their option, provided it is within said two years], at their own proper costs and expense, execute and deliver" to the vendee a deed of the premises. The contract further contained the following provision: "And it is further agreed by and between the parties to these presents that the said parties of the first part shall have and retain the possession of the said premises, and be entitled to the rents and profits thereof, until the 13th day of June, 1856, when full possession of the same shall be delivered to the said party of the second part by the said parties of the first part." At the trial it appeared that, pursuant to this contract, the vendee immediately entered into possession, and without any delay began the erection of a building for his own use, which cost several thousand dollars. At various dates subsequent to 1856, he erected additional dwelling houses, barns, etc., and the total cost of the improvement was upwards of $15,000. The vendee remained in possession until November 1, 1885, when he made a quitclaim deed to his daughter, Mary E. Little, the defendant in this action. After the execution and delivery of that deed, the defendant was in the possession and control of the property. Charles H. Little, the vendee, died in 1889. By deeds dated July 1, 1856, and February 10, 1863, the other Griswold heirs conveyed their interest in the premises in suit to Charles Griswold. It appeared in evidence that from 1856 down to the time of his death, in 1867, Charles Griswold resided abroad, and never visited the country. He died February 18, 1867, leaving the plaintiffs his heirs. On May 16, 1893, the present action was begun by the service of a summons and complaint. At the trial, the map of a public improvement was introduced by the defendant in evidence, for the purpose of showing that Charles H. Little had been regarded as the owner of the premises in suit. The name "Charles H. Little" appeared on this map as the owner of the property. The defendant further introduced in evidence a deed by Charles Griswold, conveying an adjoining plot to one Kent, and bounding the lands conveyed by "land heretofore sold by the heirs of Zachariah Griswold to Charles Little." The defendant further offered in evidence agreement between Charles Griswold, Charles H. Little, and other persons who owned property in the immediate vicinity, as to the closing of a right of way across the premises and the opening of a new road or street. In this agreement the lands in suit were referred to as "land he [Charles Little] owns or has agreed to purchase." There was no evidence of an actual payment of the purchase price. At the trial the plaintiffs moved the court to direct a verdict in their favor, and Brown, J., reserved decision on the motion, and submitted special questions to the jury. These questions were: (1) Whether Charles H. Little, prior to February 10, 1863 (the date when Charles Griswold acquired the whole title to the land), held adversely to the Griswold heirs; (2) whether Charles H. Little held adversely to Charles Griswold between February 10, 1863, and February 18, 1867, the date of Charles Griswold's death; (3) whether the purchase price of the property in suit had been paid. The jury returned an affirmative answer to each question. The plaintiffs thereupon moved to set aside the special findings of the jury, and for judgment in their favor on the motion already made, and upon which decision had been reversed. The defendant moved for judgment on the evidence and the special verdict of the jury.

Arthur O. Townsend and John C. Thomson, for plaintiffs.

Parsons, Shepard & Ogden (Edward M. Shepard, of counsel), for defendant.

BROWN, J. The defendant moves for judgment in her favor upon the evidence and the special verdict of the jury. The plaintiffs move to set aside the special verdict, upon the ground that it is not sustained by the testimony, and that a general verdict be directed in their favor. The jury have determined (1) that the consideration named in the contract with Charles H. Little has been

paid, and (2) that Charles H. Little held the land adversely to the heirs of Zachariah Griswold prior to January 22, 1863, and adversely to Charles Griswold subsequent to that date. In the judgment of the court, these findings have no support in the testimony, and must be set aside. The finding that the consideration expressed in the contract of sale has been paid rests wholly upon the presumption arising from lapse of time. Independent of the fact of Little's possession of the property, and the expenditure by him of large sums of money thereon, the only testimony from which it is claimed that the jury could infer payment are the map, the road agreement, and the deed to Kent. But these exhibits have no tendency to show a payment of the purchase price of the land, or a delivery of the deed therefor, when considered in connection with the fact that Little was given possession by the express terms of the contract, and that it was intended that he should, from and after the date of that instrument, be entitled to the enjoyment of all the rights of an owner. The fact that he was treated as such by Charles Griswold or his attorney in fact throws no light upon the question of the payment of the purchase money. All the expressions of the paper referred to are entirely consistent with the fact that he was a vendee in possession of the land. The fact of possession, and the large expenditures made by Mr. Little for buildings and other improvements upon the property, have likewise, in my judgment, no bearing upon this question. Possession was given by the contract. It was a fact existing immediately upon the execution and delivery of that instrument. So the improvements and expenditures began immediately upon possession being taken. The expenditure of money was made in the beginning upon the faith of possession, and not upon the acquisition of the legal title. It is impossible to draw any inference from these facts that payment of the purchase money was made two years after possession began. The case is barren, therefore, of any testimony from which the jury could find that the purchase money had been paid, unless that fact could be presumed from the lapse of time. But that such a presumption cannot be drawn in a case of this character is settled by authority. Morey v. Trust Co., 14 N. Y. 302; Lawrence v. Ball, Id. 477; Brady v. Begun, 36 Barb. 533.

I fail to find any testimony tending in the slightest degree to support a finding of adverse possession. The plaintiffs show a perfect paper title, and the occupation of the land by any other person is presumed to be subordinate to their title, until the contrary is shown. When a stranger to a recorded title enters into possession of land, his entry is assumed to be hostile to the real owner, and his possession is the continued assertion of an adverse right. But in this case the entry was under the Griswold title, and the subsequent possession is presumed to be subordinate to that title, until some act hostile thereto is shown. The burden of proof rested upon the defendant to show an adverse holding, but she has shown none. It nowhere appears that Charles Little ever asserted any claim to the land hostile to Griswold's rights. That he spoke of it as his property is true, but that of itself is of no importance, unless the

assertion was made to his vendor, and amounted to a claim of the entire title. To say that the property was his did not, in view of the fact that his possession was with the assent of the vendors, necessarily deny their legal title. It is apparent, therefore, that, in the absence of proof of an assertion of an adverse right, there could be no possession adverse to the Griswolds, until the contract of sale was performed by payment or tender of the purchase money. There being no proof of that fact, the finding of adverse possession is unsupported. The testimony shows no act of Mr. Little's which was hostile to Griswold's title until the conveyance to the defendant in 1885, but sufficient time has not elapsed since that date for the defendant's possession to ripen into a title. The defendant's motion for judgment is therefore denied, and the plaintiffs' motion to set aside the special verdict is granted. It follows that a verdict must be directed for the plaintiffs, unless a tender of a deed was essential to a maintenance of the action. Upon the trial, I was of the opinion that a tender was necessary to support the action, but subsequent reflection has changed the opinion then expressed. The defendant's position on this question would be unassailable, if she claimed the land as a vendee in possession. But she repudiates that character wholly. She claims title to the land under the deed from Charles H. Little, exclusive of any other right, and asserts a title adverse to the plaintiffs. Under such a claim, a tender would be a useless act. The defendant, while denying the plaintiffs' title, cannot claim the benefit of a rule the observance of which would be founded solely upon the existence of that title, and the fact that her rights were subordinate thereto. The motion to dismiss the complaint is therefore denied, and a verdict is directed in favor of the plaintiffs for the possession of the land. In the brief submitted by the plaintiffs they offer to accept a judgment in the alternative which would permit the defendant to take title on payment of the purchase money and interest. A court of equity has the power to relieve the defendant from default, and permit a performance of the contract, but no equitable right is claimed by the defendant; and I have no power in this action, as the pleadings now stand, to treat the case as other than an ordinary action in ejectment. I shall therefore direct a verdict for the plaintiffs, with leave, however, to the defendant to apply to me within 20 days to amend her answer in such form as to permit such a judgment as the plaintiffs' offer, should she desire to avail herself thereof.