A formal order may be entered in accordance with this opinion.

---

RUSSELL v. WOLFF et al.

(Supreme Court, Appellate Term, First Department. February 23, 1897.)

SALE—RESCISSION—RECOVERY OF PRICE.

　　Plaintiff paid $65, and gave his notes for $105 more, as the purchase price of a horse to be selected from defendant's stable, by selecting, trying, and sending back till plaintiff obtained one to suit him. After selecting, trying, and returning four as unsatisfactory, all being received back, a veterinary surgeon selected one for $135 that suited plaintiff. He paid $75, the balance

of the purchase price, and demanded the surrender of his notes and delivery of the horse. This demand was refused. *Held*, that the acts of the parties evidenced a rescission of the sale as to the first four horses, and the buyer had a right of action to recover the money paid and his notes.

Appeal from Tenth district court.

Action by Patrick Russell against Edmund Wolff and others to recover $135 paid for a horse. From judgment for plaintiff, defendants appeal. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Herman H. Baker, for appellants.

Tierney & Halsey, for respondent.

McADAM, J. The action is to recover $135 paid to the defendants under the following circumstances: About July 28, 1896, the plaintiff purchased a gray horse from the defendants, who keep a sales stable. The price was $150, on which the plaintiff paid $60, and gave his note at two months for the balance, $90; at the same time executing an agreement that the title to the horse should remain in the defendants until it was fully paid for. It was agreed at the time of the purchase that, if the horse did not suit the plaintiff, he might send it back and get another, as the defendants had plenty of horses on hand, and that the plaintiff might keep on sending back until he obtained a horse that would suit him. The gray horse was sent to the plaintiff's stable, and, on the night of its arrival, kicked down the stall and the stable door. The plaintiff sent it back, and got a brown horse instead, at the same price. When this brown horse was hitched up next morning in the plaintiff's stable, it kicked in the front of the wagon. This horse was also returned, and a third horse taken in its place, at $165, the defendant giving another note for the extra $15. The third horse was examined by Dr. Doyle, a veterinary surgeon, and, on his recommendation, was likewise returned, whereupon the plaintiff got a fourth horse at $200, giving a note for $35 more. According to the evidence the fourth horse proved "tender forward," and it was, on that account, returned. In each instance the return was made promptly. The plaintiff, concluding that he had experimented enough on his own judgment, sent Dr. Doyle to the defendants' stable to pick out a horse for him. Doyle went to the stable, and said he desired a horse for a poor man, who wanted it as cheap as possible, and that he expected his man there shortly. Doyle examined the defendants' horses, and picked out one, and the defendants fixed the price at $135. When the plaintiff came, Doyle said to the defendants, "This is my man." The horse was hitched up to one of the defendants' wagons, tried, and found to be satisfactory. The plaintiff paid the defendants $75 in cash, which, with the $60 in cash previously paid, made the full purchase price, $135. He thereupon asked for the horse, but the defendants said he could not have it until he paid $60 more, as the $60 previously paid did not count on that transaction. The plaintiff demanded the return of the $75 paid and the notes which he had given, but the defendants refused to give up the money, the horse, or the notes, and afterwards explained to the witness Tierney that the reason was that

the plaintiff had fooled them by sending a veterinary surgeon around to pick out a horse; that they had the money, and they were going to keep it. It appears by the evidence that the defendants sold the first four horses at better prices than those agreed to be paid by the plaintiff. The defendants' theory seems to be that the first four transactions represented so many independent sales, and that the balance on each of them was due. This is a mistake. According to the plaintiff's evidence (which the justice believed to be true, and which we accept as settling the facts), the defendants were obliged to keep on furnishing horses to the plaintiff until he was satisfied. That was their contract, the only control reserved by the defendants being as to the price on the exchange. In fact, each transaction was a substitution of one horse for another, leaving the contract in full force. Even if this were not so, the acts of the parties evidence a rescission as to the first four horses, leaving the plaintiff in a position to demand the return of the $60 paid and the three notes given. Collins v. Brooks, 20 How. Prac. 327; Sturtevant v. Orser, 24 N. Y. 538; Grouse v. Wolf (Com. Pl.) 24 N. Y. Supp. 703; Fulton v. Insurance Co. (Com. Pl.) 23 N. Y. Supp. 598; Coon v. Reed, 1 Hilt. 511. When Dr. Doyle selected the $135 horse, and the defendants closed the sale to the plaintiff by accepting the $75 which he paid on the substitution of horses, the plaintiff, by force of the contract, was entitled to have the $60 previously paid applied on account of the purchase, and also to a return of the three notes. The defendants' refusal to deliver the $135 horse gave the plaintiff, under the circumstances, a clear right to a return of the $135, and this, in effect, is what the justice decided. Vide supra.

The judgment was right, and must be affirmed. All concur.