wise would be entitled to a recovery in an action like this, and that the right of the sisters and brother in this case are not affected by the provision contained in section 11 of the Compensation Law, which makes the liability prescribed by section 10 of that act exclusive. I think it was not intended by the amendment to the Constitution, or by the Workmen's Compensation Law passed thereunder, to take away the right of action in death cases to recover damages, without providing a substitute therefor.

The intestate left him surviving no widow, no father or mother, and no descendants. His only next of kin surviving him are the sisters and brother named in the complaint, and it is their loss, resulting from the death of their brother, occasioned through the fault of the defendant, his employer, for which the action is brought. While provision is made by the Workmen's Compensation Law for compensation under certain contingencies to dependent brothers and sisters under the age of 18 years (section 16, subd. 4), it does not appear that the sisters and brother for whose benefit this action is brought are under that age. Indeed, it was conceded upon the argument that they were not. So that, unless this action may be maintained, no right to recover damages for the negligent killing of the intestate exists at all.

I think the right of the persons for whose benefit this action is brought is not affected by the Workmen's Compensation Law, but remains as though that act had not been passed. This view, I think, is in accord with the reasoning of Mr. Justice Scott in Shinnick v. Clover Farms Co., 169 App. Div. 236, 154 N. Y. Supp. 423, where the determination of the Appellate Term is unanimously affirmed.

The interlocutory judgment and order appealed from should be affirmed, with costs. All concur, except DE ANGELIS, J., who dissents.

---

(173 App. Div. 764)

### ARNOLD v. NEW YORK, W. & B. RY. CO.

(Supreme Court, Appellate Division, Second Department. June 2, 1916.)

1. ADVERSE POSSESSION ☞27—WHAT CONSTITUTES—EVIDENCE.

Acts of enjoyment to prove possession of land cannot in the nature of things be confined to the precise spot in dispute; therefore, where land is inclosed, evidence of acts in other parts of the inclosed lands may be received, provided there is such a common character of locality between those parts and the part in question as would raise a reasonable inference that the land in dispute belonged to the possessor, if the other portions did.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 121, 122, 652, 664, 684; Dec. Dig. ☞27.]

2. ADVERSE POSSESSION ☞19—WHAT CONSTITUTES—BOUNDARY FENCES.

Exterior boundary fences around a parcel of land will not alone establish adverse possession of interior strips.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 99–105; Dec. Dig. ☞19.]

3. ADVERSE POSSESSION ☞21—WHAT CONSTITUTES—FARMING LAND.

Under Code Civ. Proc. § 372, declaring that, for the purpose of constituting adverse possession, land is deemed to have been possessed

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and occupied where.it is protected by substantial inclosures, or where it has been usually cultivated, adverse title to a strip of land may be acquired where the strip was inclosed in the exterior boundary fences of a larger portion, and the whole parcel was cultivated by the possessor in the usual manner, notwithstanding there was little work on the particular strip, which was unsuitable for cultivation.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 109, 110; Dec. Dig. ☞21.]

Appeal from Special Term, Westchester County.

Action by Emma C. Arnold against the New York, Westchester & Boston Railway Company. From a judgment dismissing the complaint on the merits, plaintiff appeals. Affirmed.

Appeal by the plaintiff from a judgment dismissing the complaint on the merits, entered in the clerk's office of Westchester county on August 21, 1914, upon decision of the court at Special Term in a suit in equity to enjoin the defendant from trespassing upon two parcels of land in White Plains, over which defendant had built and run its electric railroad.

These two parcels, called A and B, were separated strips, each being 66 feet wide. They formed parts of the proposed Southern Westchester Railroad Company, which had been projected in 1872, but was never completed. After 1872 the railroad company did no work on these parcels, and its interest therein was sold under foreclosure in 1876. From this decree, through mesne conveyances in 1881, the title passed to Van Pelt, who conveyed to Hopkins in 1904, and Hopkins conveyed to plaintiff in 1907. Defendant now has a right of way through these parcels, by a chain of title, going back to the Barker sisters, the original grantors to the Southern Westchester Railroad Company.

Parcel III, which entirely surrounds and includes the strip called B, was shown to have been wholly inclosed by stone walls, and a wire fence in 1887. It had a small residence house near the public road. The occupants kept up these fences. The possession appears to have been undisturbed since 1872. Most of this parcel had been pastured, though formerly it had been cleared for tillage. There was still visible evidence of an old excavation for a railway cut two or three feet in depth.

In like manner parcel IV included the shorter strip A. The land here was better, with crops raised on it, and afterwards used as a vegetable garden and orchard. It was also fenced. But in case of each of the strips A and B there had never been any fence to separate them from the residue of the surrounding parcels of which they formed parts. It was also found that since 1872 neither the plaintiff nor her predecessors in title had ever been in actual possession of parcels A or B, or have ever used or enjoyed them. Accordingly the court held that the grant to plaintiff from Hopkins in 1907 was void, since, when that conveyance was delivered, the property was in actual possession of one Louis V. Sone, claiming under adverse title (Real Property Law [Consol. Laws, c. 50] § 260), with a like conclusion as to the earlier deed from Van Pelt to Hopkins in 1904.

From this judgment of dismissal, plaintiff appealed.

Argued before JENKS, P. J., and CARR, STAPLETON, and PUTNAM, JJ.

J. Henry Esser, of Mt. Vernon, for appellant.
Ralph Polk Buell, of New York City, for respondent.

PUTNAM, J. [1, 2] This appeal questions the adverse possession of land parcels which are surrounded by larger tracts. These strips, granted in 1872 for railway purposes, were not fenced off, and, when the railroad project was dropped, appear to have been abandoned and discarded. The land then became used as portions of the surrounding farm tracts and returned to its original occupation. As a mere pro-

jected way, it had not been fenced off; of course, it required no separate fencing when restored to its use as part of a larger field cultivated and pastured to its original limits, where the field was substantially fenced in. Such exterior fencing, being kept up upon the entire inclosed lands, became acts which might reasonably lead to the inference that the entire land, and consequently these strips, belonged to the same owners. Acts of enjoyment to prove possession of land cannot in the nature of things be confined to the precise spot in dispute. Evidence of acts in other parts of the inclosed lands may be received, provided there is such a common character of locality between these parts and the spot in question as would raise a reasonable inference that the place in dispute belonged to the plaintiff, if the other parts did. Hence, to prove title to a close, plaintiff may give in evidence acts of ownership within the same enclosure. Jones v. Williams, 2 Meeson & Welsby, 326, 331. But in most of the United States such exterior boundary fences, alone, would not establish adverse possession of such separate interior strips. Doolittle v. Tice, 41 Barb. 181; 1 Cyc. 990.

[3] The findings specifically made as to tillage, cultivation, and pasturage are affected by the proof of these visible boundary fences shutting in these entire tracts. They show an occupation, not desultory and fugitive, but each tract, as a single close, held in undisturbed possession for purposes of ordinary farming, or, as the Code says (Code of Civil Procedure, § 372), "usually cultivated or improved," showing actual appropriation and control extending over the entire tract. During more than 40 years there has been no other person claiming any right in these lands. The possession of defendants' predecessors was therefore exclusive, and effective to exclude all persons from interfering with the occupier's use and enjoyment, so that the acts done within these substantial inclosures, with these fences, were marks of exclusive possession. A rocky abandoned railroad cutting lapsed into part of the surrounding farmlands. In order to show de facto possession, the occupant is not called on to try to plow over such waste land, if he is dealing with such spot in the ordinary manner that a farmer would use his own property. The Roman law also looked to the purpose of such occupation when applied to farm lands, declaring that it was sufficient to enter upon part of the farm, with the purpose and intention to possess the entire farm to its boundaries. "Sed sufficit quamlibet partem ejus fundi introire, dum mente et cogitatione hac sit ut totum fundum usque ad terminum volit possidere." Dig. 41, 2, 3. Such possession of agricultural lands is therefore a mixed question of law and of fact. On the findings here made as to cultivation, tillage, use, and enjoyment, adverse possession under Code of Civil Procedure, § 372, subd. 2, has been found as a fact, which finding is the stronger because, after 1872, the prior owner had left both these strips as derelict and vacant.

I advise that the judgment be affirmed, with costs. All concur.