ARTHUR W. CHERRINGTON, Respondent, *v.* SOUTH BROOKLYN RAILWAY COMPANY and Others, Appellants.

Second Department, December 14, 1917.

**Real property — suit in equity to enjoin railroad from using roadbed — issue as to whether railroad paid full consideration for conveyance — uninterrupted possession for over twenty years — non-payment of consideration not established by running of Statute of Limitations — burden on plaintiff to show default in payment — presumption of payment through lapse of time — equitable relief denied for laches.**

A plaintiff suing in equity to enjoin a railroad company from maintaining its roadbed on a portion of his lands, the roadbed having been in open and notorious use for over twenty years and described in the deeds and maps of the plaintiff's predecessor, cannot base his claim of title on the fact that there is no proof that the railroad company or its predecessors paid to the plaintiff's predecessor a balance due on the sale of the roadbed and that the Statute of Limitations has run on the railroad's right of action for the specific performance of the agreement of the plaintiff's predecessor to convey.

Under the circumstances the burden of proof is upon the plaintiff to show a default by the defendant in paying the balance of the purchase price and for want of such proof the plaintiff's case fails.

*It seems,* that the legal position of a vendee of lands in possession by the terms of the contract, is similar to that of a mortgagee in possession in that no lapse of time will bar his right to retain possession under his equitable lien.

*It seems,* moreover, that the undisturbed possession of the defendant for twenty years without objection raises a presumption that it paid the balance of the purchase price of the right of way, and especially so where, ten years after the defendant's possession, a predecessor of the plaintiff executed a mortgage describing the defendant's roadbed.

As the defendant has been in possession for over twenty years without an adverse claim being made by plaintiff or any of his predecessors the plaintiff's suit, being in equity, should be denied upon the ground of laches.

APPEAL by the defendants, South Brooklyn Railway Company and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 16th day of June, 1916, upon the decision of the court after a trial at the Kings County Special Term.

*Harold L. Warner* [*George D. Yeomans* and *Joseph F. Keany* with him on the brief], for the appellants.

*Lynn C. Norris* [*Edward M. Perry* with him on the brief], for the respondent.

MILLS, J.:

This is an appeal by the defendants from a judgment entered in Kings county June 16, 1916, in favor of the plaintiff, enjoining the defendants from using in any way for railroad purposes, or trespassing thereon, a certain strip of land going through two lots owned by the plaintiff in the borough of Brooklyn, and commanding the defendants to remove therefrom all tracks, ties, sleepers, fences and other appurtenances, the strip of land being a portion of the roadbed of the defendants' railroad, and granting the plaintiff judgment against the defendants for past damages in the sum of $594.34, together with costs, and staying execution of the judgment for thirty days to give the defendants an opportunity to institute condemnation proceedings.

The material facts are undisputed and are the following, being stated in the findings of the decision and in certain granted requests by defendants to find. On March 27, 1889, Joseph S. Story was the owner and possessed of a farm including the premises here in question. There were then upon it three outstanding mortgages, which subsequently, in 1901, were foreclosed, such foreclosure resulting in the usual referee's deed to one McNulty, but none of the defendants was a party to that foreclosure and, therefore, none of their rights, if any, in the premises were thereby extinguished.

On March 27, 1889, Story and the defendant, the Prospect Park and South Brooklyn Railroad Company, entered into a mutual written contract, whereby he agreed to sell and the company agreed to purchase from him a strip of land through said farm, required for the railroad of that defendant then about to be constructed, for the consideration of $1,700, $1,000 being paid at once and receipt thereof acknowledged, and the balance to be paid at the delivery of the deed on April 15, 1889, with permission given to the railroad company to take possession at once. The said company paid to Story the said sum of $1,000, and at once entered into possession of the said premises and constructed its tracks thereon, and it or its lessees, the other defendants, have continuously since maintained such tracks thereon and operated a railroad on the same under a claim of right, without any adverse claim being made against it or either of them until that recently made by the plaintiff and sought to be enforced in this action. McNulty, on June 26, 1902, gave to one Fettel a deed of a part of said farm, under which deed the plaintiff claims his title through various mesne conveyances. That deed recited the premises in question as " land of the Prospect Park and South Brooklyn Railroad," one of the defendants, and at that time the said roadbed of the railroad, upon the premises in question, was marked out by granite monuments, and the tracks were there in constant use to the observation of such grantee and all others. The subsequent conveyances into the plaintiff had the same description and were made under the same condition as to the occupation of the railroad, so that the plaintiff took his title, on December 13, 1909, with notice of the possession of the railroad company and of its rights in the land so possessed, whatever they may have then been. (*Italian Savings Bank* v. *Le Grange*, 169 App. Div. 120, 122.)

When said contract was made in March, 1889, the defendant, the Prospect Park and South Brooklyn Railroad Company, was the owner, by deed or condemnation proceedings, of the sections of its right of way adjoining the said Story farm on either side. In about 1902 one of the intermediate grantees from McNulty divided the property into lots and mapped the same as such, and the deed to plaintiff purported to convey two of those lots. The map of such division did

not purport to show the railroad at all, although in fact the railroad was then in active operation, running across the southwest corner of said lots, viz., 210 and 211 on said map. The deed to the plaintiff described the premises by such lot numbers upon said map. It appears that the said original railroad company actually built its line in 1889, somewhat differently through the Story farm, or at least that part of it, from the lines shown upon its filed map, and that the location upon that map would have excluded the railroad from plaintiff's said lots, but it is clear and found that the said contract by Story with that company did describe the strip through the lots, upon which the railroad was shortly thereafter built. The deed by McNulty to Fettel, through which plaintiff claims, made no reference to either such map. It appears that the papers of such railroad company have been imperfectly preserved, and after this controversy arose there could be found among them no deed of such strip through the Story farm, and not even the said contract. The contract was finally produced upon the plaintiff's side in response to an apparently chance inquiry by defendants' counsel just as defendants were upon the point of resting. Thereafter they called and examined the former counsel of such railroad company, who testified that about 1893 he represented it in certain litigation and for the purpose of the trial thereof looked up its muniments of title to its roadbed, which of course included the premises in question here, and found that it possessed purported conveyances of the whole thereof of some sort of a higher order than mere contracts to purchase.

There was no direct evidence introduced showing that the balance of the purchase price under the said Story contract, namely, $700, had or had not been paid, although it was found that the first payment of $1,000 thereof was actually made. Moreover there was no proof or finding that any tender of a deed to the railroad company of the premises described in that contract, or demand upon it for such balance, had ever been made by Story or by any of his successors in title. It appears that Story made a map of his farm showing it in lots, which indicated the railroad as running according to the said filed map of the railroad company, but that the railroad as actually located varied some-

what from those maps, enough so as to cross the plaintiff's lots in the southwesterly corner thereof. Still it was proven and found that when Fettel and later when plaintiff purchased, the railroad was in actual location and use as it now is. The learned trial justice, considering that the conveyance to Fettel was ambiguous in its reference to " land of the Prospect Park and South Brooklyn Railroad " as one of its bounds, admitted the parol evidence of Fettel, from which he found that the conveyance was made with reference to that Story map, although the same was not referred to in such deed. Hence he held that Fettel took Story's title to the premises in question; but he also held that by virtue of the open possession and use of the railroad company he, and later the plaintiff, took title subject to whatever rights, if any, the railroad company possessed to the said premises. He held, further, in effect, that the burden of proof rested upon the defendants to show that the railroad company did pay such balance of the said purchase price, and that, as there was no such proof and more than twenty years had passed since the date set by the contract for such payment, viz., April 15, 1889, the Statute of Limitations had barred any claim of the vendee under the contract, and that, therefore, its rights under it were barred and ended.

It is apparent, therefore, that the decision rests mainly upon the latter ground. I think that the learned trial justice was mistaken at least as to that ground. It seems to me that as the plaintiff here is seeking equitable relief, he cannot rely upon the Statute of Limitations to maintain affirmatively his claim. The trial justice in his opinion cites, as authority for his such conclusion, several cases. Of them only two, viz., *Morey* v. *Farmers' Loan & Trust Co.* (14 N. Y. 302) and *Griswold* v. *Little* (13 Misc. Rep. 281), are cases in which the contract vendee had by the terms of the contract been given possession of the premises and had taken such possession. In the *Morey Case* (*supra*) the action was brought by the vendee to obtain a decree for specific performance, and it was held that the passage of the Statute of Limitations' period of twenty years, barring an action to recover the balance of the purchase price, afforded the plaintiff no presumption of payment thereof to enable him to maintain his said action,

and that he had affirmatively to prove the fact of such payment; in other words, that the legal presumption of payment afforded by that statute cannot be used " as an instrument, in a court of equity, for affirmative, aggressive action or attack " (p. 307). This is in harmony with the general rule that such a statute may be used as a shield but not as a sword. (*House* v. *Carr*, 185 N. Y. 453.)

In the other, the *Griswold Case* (*supra*), former Mr. Justice Brown, once presiding justice of this court, held at Circuit that in an action of ejectment such a contract vendee, who had been in possession for thirty years, could not defend against ejectment without affirmatively proving that he had paid the balance of the purchase price. The opinion of that justice at its close expresses the caveat that had the defendant in that action defended under the claimed right of a vendee in possession under such a contract and not under a claim of absolute ownership, it would have been incumbent upon the plaintiff to establish that defendant had been put in default by a tender of the deed (p. 286). After the discovery of the said Story contract as above recited, defendants here were permitted to amend and did amend their answers so as to allege and stand upon such right of possession. It would seem, therefore, that under that very opinion the defendants here should have prevailed upon the ground that they had not been put in default by a tender of the deed in execution of such contract. It may be added that the decision of Mr. Justice Brown in the *Griswold* case gave to the defendant the right to apply to amend her answer so as to make such equitable claim (p. 287). The briefs do not advise us as to the ultimate course of that action.

The counsel for the appellants cites and relies strongly upon the case of *Titcomb* v. *Fonda, J. & G. R. R. Co.* (38 Misc. Rep. 630), a decision and opinion at the Fulton Special Term, and the opinion of the trial justice distinguishes at some length this case from that, chiefly, however, upon the ground that in that case the contract fixed no exact time for the delivery of the deed and the payment of the purchase price. That case was very similar to the instant one, except that the action was in ejectment, and that the contract under which the railroad took possession, as above stated, did not

specify a date for the delivery of the deed and payment of the balance of the purchase price. I do not perceive that the latter fact or distinction can make any material difference. No doubt the implied obligation was to perform within a reasonable time, which would have elapsed long before the commencement of that action on January 16, 1902, the date of the contract having been July 19, 1872, and the taking of possession in the spring of 1873. The decision in that case held that the burden was upon the plaintiff to prove non-payment of the purchase price (p. 635). As remarked in that opinion (p. 637), so here it is evident from the circumstances, viz., the intended immediate construction and operation of the railroad, that the intent of the Story contract was to give to the vendee thereunder the right to take possession for such permanent purpose. It has been well established that as against a mortgagee in possession no lapse of time will bar his right to retain possession until the mortgage debt has been paid to him, even if such time has more than sufficed to bar his direct action to recover the debt. (*Becker v. McCrea*, 149 App. Div. 211, 214; affd., 214 N. Y. 632.)

It may be noted, in passing, that the decision of this court in the case just cited, to the effect that, although the defendants in their answer in that case claimed full title, nevertheless they could insist upon their rights as mortgagees in possession and take decision and judgment accordingly, appears to be contrary to the decision above reviewed in the *Griswold Case* (*supra*).

I cannot see that the position of a mortgagee in possession is at all superior to that of a contract vendee who is in possession by the very terms of the contract. The latter has at least an equitable lien upon the land equivalent to the lien of the mortgagee in possession. This principle is similar to that affirmed by the then chief judge in the opinion in *House* v. *Carr* (*supra*). It seems to me that the decision of the trial justice here, in effect placing upon the defendants the burden of proving payment of the balance of the purchase price under the Story contract, was contrary to that principle and to those authorities. It, therefore, is my opinion that the burden of proof in this action rests upon the plaintiff to show a default by the defendants in paying the balance

of . such purchase price, and that for want of such proof plaintiff's case failed.

Moreover, under the circumstances proven, I think that it might well be found that the balance of such purchase price was actually paid and due conveyance made in execution of the Story contract.   As was said by Chancellor WALWORTH in *Miller* v. *Bear* (3 Paige, 466): " The objection on account of the lapse of time cannot be sustained, as the person origi- nally entitled to the conveyance and those claiming under him, have been in the uninterrupted possession of the property, and using it as their own. * * * Under such circumstances, after the lapse of twenty years, it would probably be the duty of a jury to presume a conveyance in conformity to the agreement." The language thus used was in reference to a like case of very long uninterrupted possession by such a contract vendee (p. 467). That decision in that respect was cited with approval by the Court of Appeals in *Bruce* v. *Tilson* (25 N. Y. 194, 199), which case was cited in the opinion of the trial justice here. This inference is strongly supported in the instant case by the fact that on July 24, 1899, more than ten years after he gave such possession to such defendant, Story executed a mortgage to one Doran of a part of said farm and in the description thereof, as one of the bounds, referred to the premises in question here in these words: " Land of the Prospect Park and Coney Island Railroad." If the theory of the trial justice, expressed in his opinion, be correct, the defendant railroad company was then over ten years in default, and an action by it to obtain specific performance was already barred. The purchaser at the foreclosure sale, McNulty, at once, June 11, 1902, gave a mort- gage upon the farm, in which he expressly excepted from the premises mortgaged "that portion thereof that lies within the roadbed of the Prospect Park and the South Brooklyn Railroad." In addition, for the entire period of twenty-five years prior to the commencement of this action the railroad companies, one or the other, have been in open and constant use of such strip of land constituting its roadbed through said farm, evidently without any adverse claim being made by plaintiff or any of his predecessors in title for the balance of such purchase money. Under these circumstances plain-

tiff's claim appears to be stale and inequitable. (*Calhoun* v. *Millard*, 121 N. Y. 69, 81.)

This case, in its want of equity, is very much like that in *Arnold* v. *New York, Westchester & Boston R. Co.* (173 App. Div. 764), wherein this court affirmed a decision against the plaintiff, who asserted title to a portion of a farm which forty years before constituted a part of the roadbed of a projected railroad. In all moral, if not. legal, probability, Story did give ultimately to the contract vendee railroad company a deed of the strip and receive from it the balance of the purchase price. At all events I think that equitable relief should be denied the plaintiff upon the ground of laches.

I advise, therefore, that the judgment appealed from be reversed, with costs, and the complaint dismissed, with costs, and that in support of our judgment dismissing the complaint we find the following of the defendants' requests to find and conclude, viz., finding No. 43 and conclusions Nos. 4, 20, 21, 25a and 36a.

JENKS, P. J., RICH, PUTNAM and BLACKMAR, JJ., concurred.

Judgment reversed, with costs, and complaint unanimously dismissed, with costs, and in support of the dismissal of the complaint we find the following of the defendants' requests to find and conclude, viz., finding No. 43, and conclusions Nos. 4, 20, 21, 25a and 36a. Order to be settled before Mr. Justice MILLS.