■ ERMINIA SORRENTINO, Respondent, v. VERNA MIERZWA, Appellant.— Appeal from a judgment of the Supreme Court, Kings County, entered March 3, 1967, which (1) declared void a Nevada decree purporting to divorce Alphonse G. Sorrentino, now deceased, from plaintiff, and (2) declared plaintiff to be Sorrentino's lawful widow. Judgment reversed, on the law and the facts, without costs, and judgment granted in favor of defendant declaring that (1) plaintiff, by reason of her gross laches, is estopped from asserting her claim that she is the lawful widow of Alphonse G. Sorrentino, deceased, and (2) her cause of action is barred by the pertinent Statute of Limitations (CPLR 213, subd. 1 [formerly Civ. Prac. Act, § 53]). Plaintiff delayed about 14 years before instituting this suit for a judgment declaring her marital status, after she learned the facts concerning her husband's alleged intention not to establish a domicile in Nevada and was advised that the divorce decree was invalid. This action was begun soon after his death, which operated to prevent the adducement of his testimony on the critical issues of his intention to establish a domicile in Nevada and his fulfillment of the residence requirements of that State. In the circumstances, plaintiff is chargeable with gross laches (*Weiner* v. *Weiner*, 13 A D 2d 937; *Guibord* v. *Guibord*, 2 A D 2d 34, 36; *Wynn* v. *Wynn*, 189 Misc. 96; *Schuman* v. *Schuman*, 137 N. Y. S. 2d 485; *Marsh* v. *Marsh*, 49 N. Y. S. 2d 759, 761; 18 Carmody-Wait 2d, New York Practice, § 114:212). The existence of the support order of the Domestic Relations

Court, as to which defendant was not a party, did not resolve or toll the controversy as to the marital status of the respective parties hereto so as to justify plaintiff's delay in bringing this suit (see *Loomis* v. *Loomis,* 288 N. Y. 222; *Cominos* v. *Cominos,* 23 A D 2d 769). In general, the Statute of Limitations may be asserted as a defense in an action for a declaratory judgment, except where the action is founded on a continuous and recurring wrong (e.g., nuisance, trespass), and thus accrues and is renewed from day to day (*Gilmore* v. *Ham,* 142 N. Y. 1; *Pforr* v. *Pforr,* 227 N. Y. S. 2d 728; *Simeti* v. *Commissioner of Welfare of City of N. Y.,* 212 N. Y. S. 2d 785; 1 Anderson, Declaratory Judgments [2d ed.], § 341). Statements said to suggest otherwise are mere dicta and not controlling (see *Rosenbaum* v. *Rosenbaum,* 309 N. Y. 371, 377; *Kirn* v. *Noyes,* 262 App. Div. 581, 584; *Marsh* v. *Marsh,* 49 N. Y. S. 2d 759, 761, *supra*). Ordinarily (i.e., where the action is other than for a continuous and recurring wrong), the Statute begins to run when the parties first become aware that a controversy exists (*Hebrew Home for Orphans & Aged* v. *Freund,* 208 Misc. 658, 662; *Pollack* v. *Josephy,* 162 Misc. 238). In the case at bar the parties knew in 1951 that their marital status was in dispute; therefore when this suit was begun in 1965 the period of the Statue of Limitations had long since expired. Beldock, P. J., Christ and Brennan, JJ., concur; Hopkins and Martuscello, JJ., dissent and vote to affirm, with the following memorandum: We agree with the determination of the majority of our colleagues that plaintiff's marriage with her deceased husband was not terminated by the abortive divorce obtained by him in Nevada. We disagree with their conclusion that plaintiff is barred by the Statute of Limitations and by laches from maintaining this action for a declaratory judgment. 1. Though there is authority that no time limitation is applicable to a declaratory judgment action (*Kirn* v. *Noyes,* 262 App. Div. 581, 584), the better rule is that the period begins when a right to bring a coercive action accrues, though the controversy theretofore existed, and terminates when the right to bring that type of an action is barred (3 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3001.19, p. 30–51). The application of this rule to the facts at bar results in the conclusion that the Statute had not foreclosed plaintiff's action. The deceased husband was accompanied by defendant when he went to Nevada in his quest for a divorce. He and defendant were married on the same day that the Nevada divorce became final (Oct. 20, 1951). Soon after their return, plaintiff instituted a proceeding in the Domestic Relations Court against her husband for support and that court granted an order dated June 20, 1952, in which it was declared that he was the husband of plaintiff, legally chargeable with her support. The order further recites that the husband " consented " to an order directing the police pension fund of the City of New York to pay a monthly sum of $50 to the plaintiff for her support. During the lifetime of the husband the monthly payments were made. When the husband died, the pension fund refused to make payment either to plaintiff or defendant. This action immediately followed. Though a controversy existed over the marital status of the parties from the time of the divorce, the coercive action to compel payment of what was due to plaintiff could not be brought until the police pension fund refused to make payment. Clearly, this action was timely brought after that refusal. In the meantime, plaintiff had protected her status by an appropriate proceeding in the Domestic Relations Court within a year after the futile divorce. The court had jurisdiction over the husband and adjudicated the status of the parties; on his consent, the pension fund was directed to make monthly payments for support of plaintiff. It is hard to understand what else plaintiff might have done to prevent the interposition of the Statute of Limitations. Moreover, the result of the majority decision is that the status

of defendant as a wife of the decedent is confirmed affirmatively by the statute, though obviously her marriage was void at the time it was performed. The Statute of Limitations, however, is a defense against a claim; it may not be used as the foundation of a right (*Johnson* v. *Albany & Susquehanna R.R. Co.,* 54 N. Y. 416; *Continental Bank & Trust Co.* v. *Tanager Const. Corp.,* 193 Misc. 245, affd. 276 App. Div. 988, affd. 302 N. Y. 663; *Cherrington* v. *South Brooklyn Ry. Co.,* 180 App. Div. 659). The shield of the statute has become in defendant's hands a sword to procure for her a positive declaration of benefit, for if the pension fund does not belong to plaintiff, then defendant's victory entitles her to its fruits. 2. The defense of laches may be asserted when delay that works disadvantage or injury occurs in the maintenance of an action (*Feldman* v. *Metropolitan Life Ins. Co.,* 259 App. Div. 123, 125). Defendant may not assert the defense for several reasons. First, plaintiff did not delay in claiming her status. As said above, she began proceedings to establish her rights in the Domestic Relations Court as soon as her husband and defendant returned from Nevada. Certainly defendant was aware of the proceedings, for she testified that she knew that money had been paid by the pension fund to plaintiff for her support during the husband's lifetime. Second, no prejudice or disadvantage to defendant has been shown by the passage of time. The death of the husband hardly deprived defendant of his testimony to sustain the validity of the divorce, for he had acknowledged its invalidity by consenting to the support of plaintiff as his wife in the proceedings in the Domestic Relations Court. If he had desired to contest the proceedings, he could have done so when the evidence in his favor was fresh and readily available to him. Moreover, as defendant had accompanied him to Nevada, she herself was fully in possession of the facts concerning the trip and the issue of domicile. Third, rather than finding plaintiff guilty of laches, it seems to us that defendant is more culpable of that charge. At least plaintiff attacked the divorce at the earliest opportunity; defendant, though she knew of the success of that attack, did nothing to advance her claim until plaintiff commenced this action. We make one final observation. As we view the result in this case, it imposes a burden on an innocent spouse, against whom an invalid foreign divorce has been obtained, to bring an action for a declaration as to his or her status within a reasonable time after the date of the divorce or else run the risk of losing the rights through a claim of laches; or, at least, the burden of bringing such an action is imposed on the innocent spouse within the time of the Statute of Limitations. We think that such a burden is both unfair and does not reflect the realities of modern life. The relative ease with which a foreign divorce can be obtained, without the appearance of the spouse against whom the action is begun, has encouraged many such actions. Our courts will be besieged by actions to set aside the void decree; and the expense of the action will have to be borne by the innocent spouse whose status has been thus threatened. We think that a more appropriate rule would be that no innocent spouse loses her status by an abortive decree because of the lapse of time; and that the Statute of Limitations runs against any right flowing from that status only from the time a coercive action to enforce that right accrues. In this case, the coercive right did not accrue until the death of the husband, when plaintiff became entitled to claim the pension fund payable on his death.