Maria House et al., Respondents, *v.* Lucian C. Carr, as Administrator of the Estate of Cynthia Gilbert, Deceased, Appellant.

Equity — When Sale of Mortgaged Property under Power of Sale Contained in Outlawed Mortgage Will Not Be Restrained. A court of equity will not, on the ground that the Statute of Limitations has run against a mortgage, restrain, as a cloud upon title, a sale under a power of sale contained in the mortgage, in the absence of any allegation in the complaint or finding by the court that the bond and mortgage have been paid.

*House* v. *Carr*, 105 App. Div. 625, reversed.

(Argued May 3, 1906; decided June 19, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 27, 1905, affirming a judgment in favor of plaintiffs entered upon the report of a referee.

This action was commenced on the 23d of June, 1903, to restrain the foreclosure of a mortgage by advertisement under the statute. The mortgage, collateral to a bond of even date, was given by Alonzo House to Cynthia Gilbert on the 13th of October, 1870, to secure the payment of a debt which he owed her, then amounting to the sum of $400, within four years from date. The mortgagor owned the land covered by the mortgage at the date thereof, and at this time as well as thenceforward until he died, on the 11th of May, 1895, he resided thereon with his family. By his will he devised said land to his son, Cline E. House, one of the plaintiffs, who still owns the same subject to the dower right of his mother, the other plaintiff. The mortgagee died intestate on the 2d of April, 1902, and the defendant is his legal representative. On the 2d of April, 1903, the defendant commenced a statutory foreclosure of said mortgage, which had come into his possession as part of the assets of the estate so represented by him. The last installment of the bond and mortgage became due on the 13th of October, 1874, and no payment was proved to have ever been made thereon, nor any new promise or acknowledgment with reference thereto. Payment of the mortgage was not alleged in the complaint.

After finding the foregoing facts among others, the referee before whom the action was tried, found as conclusions of law that all causes of action on said bond and mortgage were barred by the Statute of Limitations before the commencement of this action; that the sale of the premises in such proceeding to foreclose would place a cloud on the title of the plaintiffs and that they were entitled to a judgment perpetually restraining the defendant from foreclosing the mortgage. The judgment entered accordingly was unanimously affirmed by the Appellate Division and the defendant appealed to this court.

*S. C. Huntington* for appellant.   The equities are with the
defendant.  (*Briggs* v. *Weeks*, 98 App. Div. 487; *Hulbert* v.
*Clark*, 128 N. Y. 295.)   There is no reason for an injunction.
As the sale on statutory foreclosure protects only a purchaser
in good faith (Code, § 2395) notice at the sale that the mort-
gage was outlawed would, if that were a valid objection to
the title, protect the mortgagor.  (*Hyland* v. *Stafford*, 10
Barb. 558; *Goldfrank* v. *Young*, 64 Tex. 432.)   Defendant's
remedy by foreclosure under the power of sale is not barred.
(*Hulbert* v. *Clark*, 128 N. Y. 295; *Mowry* v. *Sanborn*, 68
N. Y. 153; *Wilson* v. *Troup*, 2 Cow. 195; *Fievel* v. *Zuber*,
67 Tex. 273; *Waltermire* v. *Westover*, 14 N. Y. 16;
*Hartranft's Estate*, 153 Penn. St. 530; *Bank of Metropolis*
v. *Guttschlick*, 14 Pet. 19; *G. S. Bank* v. *Vil. of Suspension
Bridge*, 159 N. Y. 362.)

*O. M. Reilly* for respondents.   The plaintiffs were clearly
entitled to maintain this action and to a permanent injunction
restraining the defendant from foreclosing this mortgage
either by action or statute.  (*Butler* v. *Johnson*, 111 N. Y.
219; *Jackson* v. *Henry*, 10 Johns. 185; *Vroom* v. *Ditmas*,
4 Paige, 526; Code Civ. Pro. § 2400; *N. P. Assn.* v. *Lloyd*,
167 N. Y. 438; *Hayden* v. *Pierce*, 144 N. Y. 512; *Butler*
v. *Johnson*, 41 Hun, 206; *Schoener* v. *Lissauer*, 107 N. Y.
117; *O'Flynn* v. *Powers*, 136 N. Y. 423; *Mellen* v. *Mellen*,
139 N. Y. 221.)   The equities are not with the defendant.
(*Mack* v. *Anderson*, 165 N. Y. 531; Code Civ. Pro. §§ 380,
381; *Acker* v. *Acker*, 81 N. Y. 143; *Kearney* v. *McKeon*,
85 N. Y. 137.)

CULLEN, Ch. J.   This appeal presents the single question
whether a court of equity will, on the ground that the Statute
of Limitations has run against a mortgage, restrain a sale
under the power of sale contained in the mortgage.   There
is neither allegation in the complaint nor finding by the
court that the bond and mortgage have been paid.   The
complaint charged and the trial court found merely that no
payments had been made within twenty years upon the bond

and mortgage and that, therefore, they were, under the statute, barred by lapse of time.   I can find no case in the books and none has been cited to us in which such an action has been maintained.   On the contrary, in the only cases in which the precise question has been presented it has been held that the action would not lie.   (*Goldfrank* v. *Young*, 64 Texas, 432; *Hutaff* v. *Adrian*, 112 N. C. 259.)

· It is settled law, as appears by the cases cited in my brother Vann's opinion, that equity will not set aside as a cloud upon title a lien outlawed by the Statute of Limitations.   In *Matter of Willett* (70 N. Y. 490) it was sought to vacate an assessment, the enforcement of which was barred by lapse of twenty years from the time of its imposition.   In affirming a denial of the application this court said : " In this proceeding taken by him (the petitioner), seeking affirmative relief, depending upon the fact of payment, he cannot rely upon the presumption, but must show actual payment by competent proof." Hence, I assume it to be conceded that had the defendant not sought to execute under the statute the power of sale, that is to say, to foreclose by advertisement, as it is usually called, the plaintiffs could not have cleared their lands from the apparent lien of the mortgage.   The controversy is, therefore, further narrowed to this question : Did the attempt of the defendant to sell and the effect of such a sale, if had, entitle the plaintiffs to relief against the sale which would have been denied against the mortgage itself.

In support of the affirmative of this proposition it is urged that under this statute the effect of a sale is the same as that of a decree of foreclosure in a court of equity, and the question is then asked : " Is it possible that a landowner can be deprived of his land by an attack out of court which has the same effect as an attack in court, with no opportunity to defend himself ? "   To this (assuming that the sale will cut off every defense, which it will not if notice of the defense is given at the time and place of sale) I answer yes, and assert that the exact question has been determined in this state nearly a century ago.   At the time of the decision to which I refer

the statute law was substantially the same as at present, the Revised Laws of 1813 (Ch. 32, sec. 14, p. 375) enacting that the sale should have "the like effect as if any of the said mortgages had been foreclosed in the court of chancery by a decree against all parties in interest." At that time, as at present, the law declared usurious securities void. At the same time the courts had also held that at a sale under a usurious mortgage a purchaser without notice would acquire a good title. (*Jackson* v. *Henry*, 10 Johns. 185.) Such being the state of the law, in *Fanning* v. *Dunham* (5 Johns. Ch. 128) a bill was filed to restrain a statutory sale under a usurious mortgage. Chancellor KENT held that the plaintiffs could not get relief except on payment of the amount actually owing on the mortgage. The chancellor recognized perfectly the point that is now made, that by a foreclosure by advertisement the owner of the equity of redemption might be deprived of a defense which he could successfully interpose had an action been brought to foreclose the mortgage, for he said : " If the defendant was endeavoring to enforce any of his securities in this court, and the present plaintiff had set up and made out the usury by way of defense, the remedy would have been obvious. The securities would have been declared void and ordered to be delivered up and cancelled." Nevertheless, he held that as the plaintiff was compelled to resort to a court of equity he must do equity as a condition of obtaining relief. The authority of *Fanning* v. *Dunham* has never been questioned. The case is cited with approval in *Williams* v. *Fitzhugh* (37 N. Y. 444), the court saying : " He (the defendant) might stand on his legal rights and defend any and every endeavor to compel him to pay, but if he invoked the aid of a court of equity to give him affirmative relief, that court recognized his equitable obligation to refund what he had received." The case is also cited as authority in nearly every state where either our system of statutory foreclosure or the practice of giving trust deeds to secure debts obtains. The *Fanning* case equally disposes of the contention that a suit to enjoin a sale is not an attack, but a defense.

It must be borne in mind that the Statute of Limitations in this state never pays or discharges a debt, but only affects the remedy. It would be within the constitutional power of the legislature to repeal the Statute of Limitations and revive claims, the enforcement of which have been barred by the statute for a generation. (*Campbell* v. *Holt*, 115 U. S. 620.) Therefore, though the statute may have barred one remedy on the debt, if there be another remedy not affected by the statute, or one to which a different limitation applies, a creditor may enforce his claim through that remedy. Thus, *Hulbert* v. *Clark* (128 N. Y. 295) was an action to foreclose a mortgage given to secure payment of a promissory note. The note itself was outlawed, more than six years having elapsed since its maturity, and there was no promise to pay contained in the mortgage. Nevertheless, this court held the action could be maintained, Judge Earl saying: "The Statute of Limitations does not after the prescribed period destroy, discharge or pay the debt, but it simply bars a remedy thereon. The debt and the obligation to pay the same remain * * *. These notes were, therefore, not paid, and so the referee found. The condition of the mortgage has, therefore, not been complied with. The notes being valid in their inception the only answer to the foreclosure of the mortgage is payment. The mortgage was given to secure payment of the notes, and until they are paid the mortgage is a subsisting security and can be foreclosed." There is in the case of a mortgage containing a power of sale a third remedy open to the creditor, a sale under the power. It is unnecessary to determine whether the exercise of that power is barred by the lapse of time or not. If it is not, then the defendant had the undoubted right to pursue it and was very wise in so doing, just as wise as the plaintiff was in the *Hulbert* case in not suing on the note, where he would have been beaten, but in bringing an action to foreclose the mortgage. But assuming that the Statute of Limitations bars the right to exercise the power of sale, and further assuming that the plaintiffs could not set up that bar in answer to a title acquired by a sale under the barred power (which I deny),

and, therefore, is in the unfortunate (?) position of being compelled to seek relief in a court of equity, nevertheless the court will require them, as a condition of relief, to do equity and pay the debt which they do not deny they owe. For, as Judge Earl has said, the statute does not discharge or pay the debt; the debt and obligation to pay the same remain and the arbitrary bar of the statute alone stands in the way of the creditor seeking to compel payment.

The case of *Butler* v. *Johnson* (111 N. Y. 204) has no application to the case at bar. There at the suit of the devisees an executor was restrained from selling their lands for the payment of outlawed debts. The action was not against the creditor but against one who, as Judge Peckham said, was a trustee for the devisees. The learned judge recognized the general rule that the Statute of Limitations is not a ground for affirmative relief, but, as he pointed out, the action of the executor was a breach of his trust for the beneficiaries. There the fealty of the defendant was due not to the creditor but to the landowner. - Here the fealty of the defendant was due solely to himself and to the beneficiaries whom he represents. That case was decided on the ground of a breach of trust. There is nothing of the kind here.

Nor is the position in which the plaintiffs are placed anomalous. A pledgee may retain or sell the pledge, though the debt to secure which the pledge was given is outlawed (*Jones* v. *Merchants' Bank of Albany*, 6 Robt. 162; Jones on Pledges, § 582.) This is not on the theory that by lapse of time title has vested in the pledgee, for the law is otherwise (Jones on Pledges, § 581), but because the statute bars merely the remedy by action.

Doubtless from lapse of time the court might find that a mortgage had been paid, though there were no direct evidence of payment. (*Bean* v. *Tonnele*, 94 N. Y. 381; *Matter of Neilley*, 95 N. Y. 382.) But to the statement already made that there is no such claim in the pleadings or in the findings, I may add that no such question is presented by the evidence. So far from proving any payment or anything that might

lead the court to believe that payment had been made, the plaintiffs took pains to show affirmatively that nothing had been paid on the mortgage. They proved by witnesses, relatives of the plaintiffs, that Mrs. Gilbert, the defendant's intestate, had on several occasions shown them the bond and mortgage and stated her belief that they had become outlawed, and that her attorney had advised her to that effect. There is, therefore, no equity in the plaintiff's claim, and we can indulge in no speculation or surmise that were it not for the lapse of time and the death of all the parties actual payment might be proved. If the plaintiffs have any such proof, however, that may be given upon a new trial under an amendment to the complaint.

The judgment appealed from should be reversed and a new trial granted, costs to abide the event.

VANN, J. (dissenting). It is insisted that the judgment appealed from should not stand because a court of equity will not grant affirmative relief founded only on the Statute of Limitations, nor restrain the foreclosure of a mortgage for any reason without actual payment or an offer to pay the debt secured thereby.

It is a general principle that the Statute of Limitations may be used as a shield but not as a sword. The party attacked may use it to defend himself, but he cannot use it for aggressive action or as the means of getting property from the other party. Courts of equity, under ordinary circumstances, do not open their doors to a plaintiff who can produce no evidence in support of his claim for affirmative relief except the lapse of time and the Statute of Limitations.

In an early case in this court a vendee in possession of land for twenty years under a contract of sale sued in equity to compel the vendor to convey the legal title to him. While he alleged payment of the purchase money, he proved payment only of the first installment and relied on the presumption raised by the statute to enable him to get the land without payment of the balance. Thus he attempted to get property

without paying for it and his complaint was dismissed for want of equity. (*Morey* v. *Farmers' Loan & Trust Co.*, 14 N. Y. 302.)

*Lawrence* v. *Ball*, reported in the same volume at page 477, was a similar case resulting in the same way.

These cases were followed and made the basis of the judgment rendered in *Johnson* v. *Albany & Susquehanna R. R. Co.* (54 N. Y. 416), where one Edgerton, after subscribing for twenty shares of the defendant's stock at the price of $2,000, paid $1,000 but did not pay five calls for installments of two hundred dollars each for the balance and an action was brought against him therefor. He interposed as a defense the Statute of Limitations, which was held good as to four installments, but judgment was entered against him for the last, which he paid. His assignee then brought an action to compel the defendant to issue its certificate for the twenty shares subscribed for, although eight of them had not in fact been paid for. He relied wholly on the presumption of payment arising from the statute, but was defeated upon the ground that such presumption was designed simply as a defensive weapon, or as a shield against attack and not as a method of acquiring property through affirmative action.

*Matter of Willett* (70 N. Y. 490) was similar in principle and was decided substantially without argument on the authorities already referred to. Other cases might be cited to the same effect but the foregoing are sufficient to show that while the statute may be used to defend, it cannot be used to attack, or to enable one person to take away the property of another by means thereof.

If the object of this action is to obtain affirmative relief simply, it should fail; but is that its real purpose? What are the facts? A mortgage for $400 on a farm worth $1,000 was allowed to run with no effort to collect it from October 13th, 1874, when the last payment fell due, until May 11th, 1895, when the mortgagor died, and yet seven years longer until the mortgagee died, and one year longer still when his administrator began a foreclosure by advertisement, claiming the

amount unpaid to be $938.75, which with the costs would
equal the value of the property. Both mortgagor and mort-
gagee lived in the same county, yet the mortgagee allowed
more than twenty years to elapse after the mortgage became
due before the mortgagor died, and although he survived him
seven years, he never attempted to collect the mortgage in
any way. More than twenty-eight years had passed before
the proceeding to foreclose was begun. If the administrator
had sued the bond at law, or had commenced to foreclose the
mortgage in equity, the Statute of Limitations could have
been pleaded as an absolute defense. Perhaps for this reason
he kept out of court altogether and sought to enforce the
mortgage through the power of sale contained therein. What
was the heir of the mortgagor to do under these circumstances
in order to defend himself? He had not commenced the
attack. The administrator was the aggressor, although doubt-
less from prudential motives he did not go into court. Nearly
a generation had gone by since the last payment fell due. All
the parties to the original transaction had passed away. The wit-
nesses presumed to know whether the mortgage had been paid
or not were dead, or incompetent to testify. There was no way
to defend against the statutory foreclosure, directly, yet if the
sale took place what would be the result? The statute pro-
vides that a sale " to a purchaser in good faith is equivalent to
a sale pursuant to judgment in an action to foreclose a mort-
gage" in every substantial respect. (Code Civ. Pro. § 2395.)
The affidavits of sale, when recorded, "are presumptive evi-
dence of the matters of fact therein stated with respect" to
the property sold. (Id. § 2398.) Thus, the proceeding to
foreclose by advertisement is a substitute for a foreclosure by
action and has the same effect so far as any question now
before us is concerned. (*Jackson* v. *Henry*, 10 Johns. 184;
*Tuthill* v. *Tracy*, 31 N. Y. 157.) It was simply another
form of foreclosure resorted to, apparently, because no direct
defense could be made thereto. Is it possible that a land-
owner can be deprived of his land by an attack out of court,
which has the same effect as an attack in court with no oppor-

tunity to defend himself? The plaintiffs were made parties
to the proceeding under the statute, for notice was served
upon them, yet they could not defend in the proceeding itself
as the law does not authorize it. They could only defend
themselves by going into court and asserting their defense
there. It is true, as urged by the appellant, that they could
give notice at the sale that the mortgage was outlawed, but
the statute does not authorize it, yet it makes the affidavits
presumptive evidence of a title equivalent to one obtained by
a sale under foreclosure in equity. If a purchaser, in good
faith, brought ejectment, how could the landowners defend
against one form of sale any more than the other, when the
statute pronounces each equivalent to the other? If they
could not, the plaintiffs were without any direct means of
defense against the attack made by the defendant.

But, assuming that notice given at the sale would be
effective as to the purchaser, it would be no protection under
the Recording Act against a grantee or mortgagee of the pur-
chaser acting in good faith and without notice. There would
be no effectual means of giving notice to them, for nothing in
the nature of a *lis pendens* could be filed or recorded in the
county clerk's office so as to notify all the world. It would
be only by accident or through good fortune in learning of a
proposed conveyance or mortgage that notice could be given
in time, and if action was thus defeated once what assurance
would there be that it could be defeated twice, or indefinitely
while another generation was passing and witnesses to prove
the notice were disappearing? Can one with a defense to a
mortgage given him by statute be prevented from asserting it
in any way, directly or indirectly, at the election of the mort-
gagee? Can the mortgagee by selecting one form of fore-
closure or one method of attack, prevent an absolute defense
given by law? Can one party to a contract control both the
action and the defense?

I think that the plaintiffs did not commence this action by
way of attack but simply for self-defense. With no remedy
at law, bound and helpless against the attack made upon them

by the mere election of the defendant to foreclose by adver-
tisement, their only means of defending themselves was to
make their defense in a court of equity. Quite independently
of the technical learning relating to a cloud upon title, or to
the duty of paying the debt before asking affirmative relief, I
think they had a right to thus defend themselves, for other-
wise a mortgagee can nullify the Statute of Limitations and
the mortgagor is powerless to prevent it. The plaintiffs did
not go into court for affirmative relief in the ordinary mean-
ing of that term. They did not go there to get the property
of the defendant, but went solely for the purpose of defending
themselves against the attack made by him. Equity looks at
substance rather than form, and the substance of the matter
is that the defendant was the assailant. As Chancellor Kent
said in *Jackson* v. *Henry* (10 Johns. 196) : " The notice given
by the advertisement is intended for the party as well as the
world, and he has an opportunity to apply to chancery if he
wishes to arrest the sale," in that case on the ground of usury,
but is that a more equitable defense than the Statute of Limi-
tations, so as to warrant a distinction ? (*Peters* v. *Mortimer*,
4 Edw. Ch. 279.)

This is purely a defensive action, and unless the courts con-
fess themselves unable to enforce the law, it should be sus-
tained as the only practicable way of asserting a defense
which the law gives. *Ubi jus, ibi remedium, et boni judicis
ampliare jurisdictionem.* In principle it is like an important
case where the defense of the statute was made and a cloud upon
title prevented by parties who went into a court of equity as
plaintiffs and set up the Statute of Limitations as a defense
to an attempt to sell real estate under a power contained in a
will. (*Butler* v. *Johnson,* 41 Hun, 206, 210 ; 111 N. Y. 204,
cited in *O'Flynn* v. *Powers,* 136 N. Y. 423, and *Mellen* v.
*Mellen,* 139 N. Y. 221.) In that case the Special Term had
held that the plaintiffs were not entitled to a decree restrain-
ing the sale, because the statute was designed as a shield and
could not be invoked in aid of affirmative relief. The Gen-
eral Term and the Court of Appeals, however, held otherwise,

and it was declared by Judge FOLLETT that the "action is prosecuted strictly in defense of the plaintiffs' title, seeking no affirmative relief as such against the defendant, except to prevent her from clouding their title. Suppose a statutory foreclosure of a mortgage be commenced, all rights of action being barred by the statute, would the owner of the fee be compelled to lie by and permit his title to be clouded by a sale and defend an action of ejectment brought by the purchaser? We think not. The statute of limitations may be used defensively by a plaintiff when, as in this case, he is without an adequate legal remedy."

When the case reached this court Judge PECKHAM said: "In taking proceedings under such circumstances to prevent the further action of the defendant, which would otherwise result in placing such a cloud upon the title to their property, we think the plaintiffs do not run counter to any principle or decision holding the general view that the statute of limitations can only be used as a shield and not as a sword. * * * Under such circumstances the bar of the statute is simply a defense to the affirmative and improper proceedings of the defendant, and is not an attack upon any right of a third person." The question was asked in that case whether the plaintiffs had the right to enter a court of equity and ask for an injunction to restrain the sale when the foundation of the right rested upon the proposition that there were no legal claims against the estate, and that, in turn, depended upon the barring of such claims by setting up the Statute of Limitations against them, and it was held that they could. In other words, a defensive action was sustained, founded solely on the Statute of Limitations, and that is this case.

I think the judgment should be affirmed, with costs.

GRAY, O'BRIEN and WILLARD BARTLETT, JJ., concur with CULLEN, Ch. J.; HAIGHT and WERNER, JJ., concur with VANN, J.

Judgment reversed, etc.