**BANKERS TRUST CO. v. HALE &
KILBURN CORPORATION et al.**

No. 365.

Circuit Court of Appeals, Second Circuit.
June 22, 1936.

402

Appleton, Rice & Perrin, of New York City (Lee J. Perrin, T. F. Davies Haines, and Gerhard R. Gerhard, all of New York City, of counsel), for plaintiff-appellee.

Davisson, McCarty & Lockwood, of New York City (Allen McCarty and Donald B. Riker, both of New York City, of counsel), for original defendant Hale & Kilburn Corporation.

Mudge, Stern, Williams & Tucker, of New York City (Henry Root Stern, H. G. Pickering, and Paul D. Miller, all of New York City, of counsel), for implead-

ed defendants-appellants American Can Company, Chase Securities Corporation (now Amerex Holding Corporation), and the Shermar Corporation.

Cravath, deGersdorff, Swaine & Wood, of New York City (Wm. D. Whitney and Hugh A. Fulton, both of New York City, of counsel), for Bancamerica-Blair Corporation.

Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge (after stating the facts as above).

Hale & Kilburn, in 1918, issued $750,000 unsecured notes under an agreement naming plaintiff trustee of the issue. The notes were in ten series of $75,000 each maturing annually from July 1, 1922, until July 1, 1931. In 1920, Hale & Kilburn, in consideration of the issue to it of stock of the transferee, conveyed all its assets to the American Motor Body Company, which assumed the obligation of the notes remaining unpaid. In 1923, the Body Company effected a reorganization by the organization of the American Motor Body Corporation and the sale to it of all its assets for cash, stock, bonds, and notes of the Body Corporation and the assumption of the balance of Hale & Kilburn's notes. The Body Company then reduced its capital to $2,000 and distributed all the cash and securities that it received from the Body Corporation except $2,000, face value of demand notes of the Body Corporation to its stockholders. Hale & Kilburn and the impleaded defendants, American Can Company, Chase Securities Corporation, and the Shermar Corporation, as well as Blair & Co. to whose liabilities Bancamerica-Blair is alleged to have succeeded, all were stockholders of the American Body Company, who thus divided the consideration paid for the assets of Body Company and each received cash and securities of a value greater than the Body Company's entire outstanding obligation on the notes. The greater part of these securities were paid off in cash before receivers were appointed for Body Corporation May 6, 1931.

When this distribution amongst the stockholders was made, they agreed with each other to share all liability, loss, cost, and damage that might arise by reason of it, and that "if any action be brought or any judgment recovered," against one or more of them as a result of the "reorganization," they would "contribute for * * * payment or satisfaction of any such judgment" amounts proportionate to the shares of Class A stock held by each of them.

Defaults in the notes occurred, and on January 30, 1931, plaintiff declared due all the notes outstanding—$189,000 in principal amount. May 15, 1931, plaintiff recovered a default judgment against Body Company in Delaware for $212,561.37, being the amount of the notes, interest, and costs. An execution issued and was returned unsatisfied. Plaintiff is the only judgment creditor of Body Company.

This action at law is against Hale & Kilburn, as a stockholder of the Body Company, for money had and received upon the distribution of substantially all that company's assets, while it remained liable for the obligation it had assumed to pay the notes.

It is well settled that stockholders receiving substantially all of the corporate property of a corporation take it impressed with a trust in favor of unpaid creditors, any of whom may, to the extent of his claim, recover from any single stockholder the property so received or its value. Pierce v. United States, 255 U.S. 398, 41 S.Ct. 365, 65 L.Ed. 697; Curran v. Arkansas, 15 How.(56 U.S.) 304, 14 L.Ed. 705; Hatch v. Morosco Holding Co., 50 F.(2d) 138 (C.C.A.2), cert. denied, Irving Trust Co. v. U. S., 284 U.S. 668, 52 S.Ct. 42, 76 L.Ed. 565; McWilliams v. Excelsior Coal Co., 298 F. 884 (C.C.A.8).

It is argued that this action cannot be maintained at law because the plaintiff's case is founded on a purely equitable title which the law will not recognize. Lawrence v. Greenup, 97 F. 906 (C.C.A.6); Garetson Lumber Co. v. Hinson, 69 Or. 605, 140 P. 633; McLean v. Eastman, 21 Hun (N.Y.) 312. See Williams v. Boice, 38 N.J.Eq. 364, 367. However, it is not an insuperable objection to the jurisdiction of a court of law that the basis of an action is a trust theory, or that a relationship of a trust character is involved. In Miller v. Steele, 153 F. 714, 720 (C.C.A.6), an action at law was brought by a testator's promisee against the legatee, who got the entire estate. The court, answering the defendant's objection that the case lay in equity alone, said: "Where there is simply an obligation to pay a sum of money, there

can be no objection to a suit at law for its recovery, notwithstanding it may have become due in consequence of trust relations." Since the court pointed out the law's increasing encroachment into fields formerly exclusively occupied by equity and analyzed the reasons why trusts, for administrative reasons, were often brought into equity, it cannot be said that the court relied on the New York statute as the appellant here contends. Roberts v. Ely, 113 N.Y. 128, 20 N.E. 606, and Empire State Surety Co. v. Nelson, 141 App. Div. 850, 126 N.Y.S. 453 (2d Dept.1910), were successful suits at law to recover money had and received by the defendant which was impressed with a trust in plaintiff's favor. In supporting the action at law, a realistic approach was taken and the action for money had and received was allowed as an exception to the rule that trusts are cognizable and enforceable in equity only.

The doctrine of the Miller Case was reaffirmed in Warmath v. O'Daniel, 159 F. 87, 16 L.R.A.(N.S.) 414 (C.C.A.6), and Adams v. Jones, 11 F.(2d) 759, 760 (C.C.A.5), cert. denied, 271 U.S. 685, 46 S.Ct. 637, 70 L.Ed. 1151. In the Adams Case it was said: "Where there is simply an obligation to pay a sum of money held in trust, which has been definitely ascertained, and the plaintiff is either entitled to all or none of it, a bill in equity will not lie."

▮▮ In the instant case, only a money judgment is sought and the case lies at law where the remedy is plain, adequate, and complete. Cf. Schoenthal v. Irving Trust Co., 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185; Whitehead v. Shattuck, 138 U.S. 146, 11 S.Ct. 276, 34 L.Ed. 873; Litchfield v. Ballow, 114 U.S. 190, 5 S.Ct. 820, 29 L.Ed. 132. The fact that the other stockholders have been impleaded, demonstrates that here there is no necessity to go to equity to enforce contribution. No valuation of assets need be made, since it is stipulated that the amounts received by each of the defendant stockholders exceeds the outstanding notes. The action at law may be allowed here without encountering any of the procedural difficulties which other courts have stressed. Cf. Richmond v. Irons, 121 U.S. 27, 7 S.Ct. 788, 30 L.Ed. 864; Spear v. Grant, 16 Mass. 9; Paschall v. Whitsett, 11 Ala. 472. The one difficulty seems to be the view

that the law will not recognize a trust obligation. That view has been overruled by Miller v. Steel, supra. In Bartlett v. Smith, 162 Md. 478, 160 A. 440, 442, 161 A. 509, recovery from a stockholder was allowed in an action at law under similar circumstances, the court saying: "A sufficient and satisfactory ground is that money so paid after insolvency was taken from a fund held in trust for creditors and did not belong to the corporation; and it could give no title in the money it paid to one who did not receive it bona fide and for value." See, also, McDonald v. Williams, 174 U.S. 397, 403, 404, 19 S.Ct. 743, 43 L.Ed. 1022. It was noted that an action for money had and received is of wide application, almost equivalent to a bill in equity and generally "lies whenever a defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain." Powers v. Heggie, 268 Mass. 233, 167 N.E. 314; Kretschmar v. Stone, 90 Miss. 375, 43 So. 177, are in accord. See, also, 12 Fletcher, Cyclopedia of Corporations (1932 Ed.) § 5429.

In Phillips v. Com'r, 283 U.S. 589, 51 S.Ct. 608, 610, 75 L.Ed. 1289, involving the validity of the summary method for the collection of corporate income taxes from stockholders receiving assets, Justice Brandeis said: "Before the enactment of section 280 (a) (1), such payment by the stockholders could be enforced only by bill in equity or *action at law*." The court cited, with approval, United States v. McHatton, 266 F. 602 (D.C.Mont.), where at law, and without mention of a statute, the United States recovered a tax assessed against a corporation from shareholders to whom all its property had been distributed on dissolution.

▮▮ Resort to equity, therefore, seems to be necessary only where its flexible procedural powers are essential. We think that the liability of a stockholder, receiving dividends from an insolvent corporation, to repay them is sufficiently defined to bring it within the scope of an action for money had and received.

▮ Plaintiff is not suing here as a third party beneficiary of Body Company's agreement with Hale & Kilburn to assume the notes. The Delaware judgment against Body Company was pleaded, and plaintiff comes into court with the status

of a judgment creditor of Body Company. Thus, no difficulty arises from the rule in Goodyear Shoe Machinery Co. v. Dancel, 119 F. 692 (C.C.A.2), cert. denied, 202 U. S. 619, 26 S.Ct. 765, 50 L.Ed. 1174, that a third party beneficiary must sue in equity.

It is sought to demonstrate that Body Company remained solvent after the distribution of the consideration received from Body Corporation by pointing out that the Body Corporation assumed the obligations of Body Company and that this agreement constituted an asset of Body Company equal to its outstanding liabilities in view of the conceded solvency of Body Corporation. There is no privilege to relegate a creditor to a different payee without his consent. The identical theory here advanced has been authoritatively rejected. Northern Pacific Ry. Co. v. Boyd, 228 U.S. 482, 500, 33 S.Ct. 554, 57 L.Ed. 931; Pierce v. United States, 255 U.S. 398, 41 S.Ct. 365, 65 L.Ed. 697.

▉▉ The note agreement provides: "No recourse shall be had to or against * * * any past, present or future stockholder of the Company" (here H & K), "for payment of * * * any such Notes * * *." This clause, it is argued, inures to the benefit of Hale & Kilburn as a stockholder of Body Company by reason of the "successors and assigns" provisions of the note agreement. But such a clause does not protect stockholders who so appropriate property of the corporation that its creditors are defrauded. Preston v. C., C. & H. V. R. Co. (C.C.) 36 F. 54, 1 L.R.A. 140, affirmed 146 U.S. 630, 13 S.Ct. 131, 36 L.Ed. 1111; Abercrombie v. United Light & Power Co., 7 F.Supp. 530 (D.C.Md.); Small v. Sullivan, 245 N.Y. 343, 157 N.E. 261; Industrial & General Trust Co., Ltd., v. Tod, 180 N.Y. 215, 73 N.E. 7. Although no actual fraud is alleged here, the result is the same, since the distribution of a corporation's assets, leaving it incapable of discharging its debts, is fraudulent in the eyes of the law. See Anglo-American Land Mortgage & Agency Co. v. Lombard, 132 F. 721, 738 (C.C.A.8).

▉▉ Nor is this action barred by the statute of limitations; it could not have been brought while the current maturity and interest payments were being made. The first default was on July 1, 1928, and no default occurred on any of the notes held by persons other than Hale & Kilburn, until July 1, 1930. Notice of default was given Body Company July 20, 1930. January 30, 1931, plaintiff accelerated the maturity of the remaining unpaid notes, and the action in Delaware was commenced in the same month. Execution was returned unsatisfied June 4, 1931, and this action was brought June 18, 1931, which was less than three years after the first default. Appellant argues, however, that in an action for money had and received, the time limit (concededly six years) under New York Civil Practice Act, § 48, subd. 1, began to run in August, 1923, immediately upon the distribution of the Body Company's assets. But plaintiff's right to recover the money was not perfected until the default in payment of the notes occurred. Not till then could plaintiff accelerate their maturity. Section 11 of the Civil Practice Act of New York provides that the periods of limitation prescribed must be computed from the time the right to relief by action accrues. During the period between reorganization in 1923 and the first default of the notes in 1928, the only remedy, if any, available to the plaintiff or the noteholders would have been a protective proceeding to prevent the distribution or compel the restitution of Body Company's assets. But the fact that the statute of limitations has cut off one of two remedies does not bar the other. U. S. v. Whited & Wheless, 246 U.S. 552, 564, 38 S.Ct. 367, 62 L.Ed. 879; House v. Carr, 185 N.Y. 453, 78 N.E. 171, 6 L.R.A.(N.S.) 510, 113 Am.St.Rep. 936, 7 Ann.Cas. 185.

No one of the three corporations liable on the notes could free itself from its obligation to the plaintiff. However, when Body Company assumed the notes, its promise ran to Hale & Kilburn, not directly to the plaintiff. It is asserted that Hale & Kilburn as such promisee had the power to free its promisor from any obligation to the plaintiff, and that by its participation in the distribution of Body Company's assets, it must be deemed to have done so. Even in the absence of the contribution agreement executed by all Body Company's stockholders at the time of the reorganization, it appears that the applicable Delaware law allows creditors, who are also guilty stockholders, to maintain their position as creditors of the corporation. John W. Cooney Co. v. Arlington Hotel Co., 11 Del.Ch. 286, 101 A. 879, 891, affirmed 11 Del.Ch. 430, 106 A. 39, 7 A.L.R. 955.

The contribution agreement refutes any suggestion that the rights against the Body Company were voluntarily relinquished. By that agreement, the stockholders of Body Company evidenced their opinion that creditors might bring suit against them as distributees. Hale & Kilburn, so far as it represented the noteholders, was a creditor, as well as a stockholder, of Body Company, and as a matter of the parties' intention there appears to be no reason why special treatment with regard to this obligation should be implied when no express reference to it was made in the comprehensive agreements then executed. If, as the event proved, Body Corporation defaulted and Hale & Kilburn were called upon to pay this debt, primarily Body Company's, in full rather than its pro rata share as a distributee, equality of treatment, so clearly intended, would be lacking.

 Hale & Kilburn, on this contribution agreement, impleaded under New York Civil Practice Act, § 193, subd. 2, American Can Company, Chase Securities Corporation, the Shermar Corporation, and Bancamerica-Blair Corporation as successor to Blair & Co., Inc., and seeks to enforce its rights to contribution against them. They object that Hale & Kilburn is itself the owner of $79,000 of the notes and that they did not commit themselves to the payment of these notes by their agreement.

Hale & Kilburn acquired $66,400 of these notes in 1925 from Body Corporation, which previously had held them in its treasury. When Body Corporation had assumed these notes in 1923, so far as Body Corporation, Body Company, and Hale & Kilburn were concerned, the notes were obligations of Body Corporation only, which could thus assert no claim against Body Company or Hale & Kilburn on notes later acquired and so held in its treasury. Their relations were like that of primary obligor (Body Corporation) with the other two companies guaranteeing that the obligor would pay.

Whether or not the primary obligor on a negotiable note may reacquire it before maturity and then reissue it so as to maintain the liabilities of parties secondarily liable for the benefit of the holder after reissuance [see State Finance Co. v. Moore, 103 Wash. 298, 174 P. 22; Horn v. Nicholas, 139 Tenn. 453, 201 S.W. 756, 759, L.R.A.1918E, 157, 170; Chafee, The Reacquisition of A Negotiable Instrument by A Prior Party, 21 Col.L.Rev. 538, 551], it is clear that when Body Corporation distributed these notes to Hale & Kilburn, it reissued them solely as its own obligations. This was the apparent intention and understanding between Body Corporation and Hale & Kilburn. The stockholders of Body Company in the distribution in 1923 had received bonds secured by a mortgage on a certain plant in Detroit, owned by Body Corporation. This plant was sold to Chrysler, and to free it of the mortgage lien upon it, Body Corporation distributed cash and securities to the bondholders in proportion to their holdings. As part of the payment, Hale & Kilburn received $102,-200 (some have been paid) of these notes from the treasury of Body Corporation. The other bondholders received, as their proportionate shares, and as the avowed equivalent, new notes of Body Corporation alone. The terms of these issues were identical, the other payments on the bonds were proportionately equal, and there is no apparent reason why Hale & Kilburn should have received any more for its bonds than the others. If we followed plaintiff here, we would be holding that it received obligations of Body Corporation, with the additional backing of Body Company and its stockholders.

It is urged, however, that the Delaware judgment conclusively establishes that the plaintiff is a creditor of Body Company in the amount of the judgment, and that stockholder distributees are so far privies to the debtor corporation that they are bound as to the amount of the corporation's debt by a judgment against the corporation. Jahn v. Champagne Lumber Co. (C.C.) 157 F. 407, affirmed 168 F. 510 (C.C.A.6); Gaskins v. Bonfils, 4 F.Supp. 547 (D.C.Colo.). But it is to be observed that the judgment was the result of a mutual mistake of fact, namely, the supposition that these $66,400 of notes were the original notes on which Body Company was liable as guarantor when in fact they were obligations solely from Body Corporation to Hale & Kilburn. Obviously, neither the plaintiff trustee nor Body Company knew this latter fact but, in reliance on the note registry, both acted upon the mistaken fact as did the court in awarding the default judgment. Equity would not permit a judgment based on such a mistake to be

enforced so as to work injustice to the judgment debtor. See Bacon v. Bacon, 150 Cal. 477, 89 P. 317, 321; Lane v. Moss, 64 Hun, 632, 18 N.Y.S. 605, 606; Wellman v. Bethea, 228 F. 882 (C.C.A.4); Pomeroy, Equity Jurisprudence (4th Ed.) §§ 871, 1364, 2080. Thus Body Company could have enjoined collection of the judgment so far as it represented the $66,400, and this relief should be equally available to Body Company's shareholder-distributees. Although this defense was not pleaded by Hale & Kilburn, the pleadings should be amended to conform to the proofs. A suit for money had and received is like a proceeding in equity so that only what is equitably due may be recovered. See U. S. Paper Exports Ass'n v. Bowers, 80 F.(2d) 82, 84 (C.C.A.2). We think the judgment should be reduced by the sum of $66,400 and the interest allowed thereon.

Notes to the extent of $12,600 were purchased by Hale & Kilburn in the open market between October 30, 1924, and November 13, 1925. These were not extinguished because at the time they were acquired, Hale & Kilburn was not the primary obligor. As a surety, it might take up a note from the holder and enforce it against the principal. The sellers of these notes to Hale & Kilburn would not be estopped to assert against the impleaded appellants any liability they may be under with respect to these notes by reason of the assumption thereof by the Body Company, and the distribution of its assets under the stockholders' agreement. Hale & Kilburn, as their assignee, is not estopped to do so and may collect on these notes. The interest payable on the notes is that provided for pursuant to the agreement under which the notes were issued in 1918.

Hale & Kilburn appeal from that part of the final judgment which dismisses, on the merits, so much of the answer of Hale & Kilburn Corporation as demands judgment against the impleaded Bancamerica-Blair Corporation. The facts are stipulated. Blair & Co., Inc., a New York corporation, was one of the stockholders of the Body Company which received assets of that company on the distribution in 1923. Blair & Co., Inc., was dissolved July, 1929. Prior to its dissolution on or about May 17, 1929, Blair & Co., Inc., sold, assigned, and transferred specified and described assets belonging to it and having a value of $8,890,925 to the Blair National Bank of New York, which assumed certain specified liabilities and obligations of the transferor arising out of and connected with the properties so transferred. In consideration of this transfer, the transferee issued all the shares of its capital stock to the transferor, which in turn distributed the same to its own stockholders. On or about the same day, Blair & Co., Inc., sold, assigned, and transferred to Blair-America Securities Corporation, assets and properties amounting to $40,859,075 net, in consideration of the issuance of all the transferee's stock to Blair & Co., Inc., which in turn distributed the same to its own stockholders. The transferee assumed by agreement certain of the transferor's obligations, but the agreement did not cover the liabilities of Blair & Co., Inc., by reason of its participation in the distribution of Body Company's assets.

In May, 1929, Blair-America Securities Corporation was merged into the impleaded Bancamerica-Blair Corporation, and in this merger the holders of shares of capital stock in the former corporation surrendered them and received in exchange shares of the capital stock of the impleaded Bancamerica-Blair Corporation. On or about June 26, 1929, Blair & Co., Inc., assigned and transferred to Suffolk Corporation, a Delaware corporation, all its remaining assets and properties with a value of $10,566,029.43, and this company assumed all the debts, liabilities, and obligations of Blair & Co., Inc., of every nature whatsoever, whether matured or unmatured, absolute or contingent, with a listed amount of $1,287,590.46. In consideration of this transfer, Suffolk Corporation issued 176,622 shares of its capital stock to Blair & Co., Inc., which in turn distributed the same to its own stockholders. Thereafter Suffolk Corporation issued and sold 29,261 additional shares of stock. In July, 1929, Blair & Co., Inc., was dissolved in the manner provided for in section 105 of the Stock Corporation Law of the State of New York (Consol. Laws, c. 59). Impleaded Bancamerica-Blair Corporation is the successor by merger to Blair-America Securities Corporation, which is charged with the liabilities arising out of the agreement made July 5, 1923, among the stockholders of the Body Corporation.

408

The lower court viewed the transfer to Blair-America Securities Corporation as separate from the final act of transferring the remainder of its assets to the Suffolk Corporation and thus held that the first transfer left Blair & Co., Inc., solvent by several million dollars. However, trial counsel for Bancamerica had conceded on the trial that the three transfers of the assets of Blair & Co., Inc., were in legal effect simultaneous. With this fact, there must also be taken the fact that the stock of the transferee corporations was distributed to the stockholders of Blair & Co., Inc., which thereupon dissolved. If the transferee corporation participated in this transaction with the knowledge that it would culminate in leaving Blair & Co., Inc., incapable of responding to its creditors, it is liable upon the transferor corporation's debts up to the value of the assets received. In re Alamac Operating Corp., 42 F.(2d) 120 (C.C.A.2); Okmulgee Window Glass Co. v. Frink, 260 F. 159 (C.C.A.8); Hibernia Ins. Co. v. St. Louis & New Orleans Transp. Co., 13 F. 516 (C.C. Mo.); Hurd v. N. Y. & 'Conn. Steam Laundry Co., 167 N.Y. 89, 60 N.E. 327. If the three transfers are to be regarded as simultaneous, and merely the component parts of a single complete transaction, it is difficult to avert the inference that all the transferees participated with knowledge of the dissolution. In such circumstances, it is immaterial that the stock of the transferees passed through the hands of the transferor corporation. This situation differs from that where the transferor corporation receives full value for its assets in stock of the transferee and retains it, so that it is available to creditors. Cf. Cashman v. Hitchcock, 293 F. 958 (C.C.A.1); Ozan Lumber Co. v. Davis Sewing Machine Co., 284 F. 161 (D.C.Del.); Swing v. Empire Lumber Co., 105 Minn. 356, 117 N.W. 467. In the Cashman Case, the stock had been held by the transferor for at least three years; in the Ozan Lumber Co. Case the court noted that the "shares received may be attached and sold." In the Swing Case, the court commented that the transferor corporation was still in existence and liable to be sued. Unless it was relying upon a purely formal liability to suit, the court invites the inference that the transferor could satisfy its creditors.

In the new trial which is hereby granted, Hale & Kilburn will be afforded an opportunity to offer further proof to show that Blair & Co., Inc., transferred all its assets to three corporations, the sole consideration therefor being the issuance of the transferees' shares to the transferor's stockholders. If the transfers were merely successive steps in carrying out a single transaction for the distribution of the property of Blair & Co., Inc., and its dissolution, the impleaded defendant, Bancamerica-Blair Corporation, as the transferee's successor, should have its share of liability to Hale & Kilburn.

Judgment affirmed as to Hale & Kilburn on condition that the judgment be reduced $66,400 with interest thereon, with a right to recover by Hale & Kilburn against the appellants American Can Company, Chase Securities Corporation, and the Shermar Corporation, a correspondingly less amount. Judgment reversed as to Bancamerica-Blair Corporation and a new trial ordered.