**PRODUCTS ENGINEERING CO.**

v.

**OKC CORPORATION.**

**LONE STAR INDUSTRIES, INC.**

v.

**Charles REDWINE, etc.**

Civ. A. Nos. 82–77, 82–2568.

United States District Court,
E.D. Louisiana.

June 12, 1984.

Nathan T. Gisclair, Jr., Montgomery, Barnett, Brown & Read, New Orleans, La., for plaintiffs.

Brice & Barron, John P. Lilly, Jim K. Choate, Dallas, Tex., Stone, Pigman, Walther, Wittman & Hutchinson, William D. Treeby, New Orleans, La., for defendants.

Monroe & Lemann, Benj. R. Slater, Jr., Michael R. O'Keefe, III, New Orleans, La., for General Elec. Co.

Phelps, Dunbar, Marks, Claverie & Sim, Rutledge C. Clement, Jr., Danny Shaw, David J. Krebs, New Orleans, La., for Mc-B Steel.

OPINION

ARCENEAUX, District Judge.

OPINION

This matter came before the Court on motions to dismiss filed on behalf of defendants OKC Limited Partnership ("Partnership") and Cloyce K. Box ("Box") in the second of these consolidated matters. After the Court requested supplemental memoranda, the parties waived oral argument and the matter was taken under submission. Having thoroughly reviewed the memoranda of counsel and the law, Civil Action No. 82–2568 is DISMISSED for reasons set forth hereinafter.

The operative facts in this matter are all undisputed as set forth in the documents attached to the Complaint and Amended Complaint. On May 13, 1980, the stockholders of OKC Corporation ("OKC") a Delaware Corporation with its principal place of business in Texas, adopted a Plan of Liquidation and Dissolution, which provided for the complete liquidation and distribution of OKC's net assets. Under the terms of this plan, all of the assets of OKC, except for an amount reasonably required to provide for payment of all claims or liabilities of OKC or expenses of liquidation, were to be distributed to OKC stockholders within one year from the date of stockholder approval. If such final distribution could not be made within the year, the plan called for transfer of the remaining assets and liabilities to a trust created for the pro rata benefit of OKC's stockholders. The sole function of the liquidating trust was to satisfy claims and liabilities of OKC and distribute any remaining assets to OKC stockholders. As reflected in the proxy statement accompanying the notice of the shareholders meeting at which dissolution was sought to be authorized, the trust was designed to comply with Section 337 of the Internal Revenue Code in an effort to avoid double taxation which could otherwise result from the sale of corporate assets and subsequent distribution of the proceeds to shareholders.

However, the chronology of events did not occur as planned. The Certificate of Dissolution of OKC Corporation was filed with the Secretary of State for the State of Delaware on May 11, 1981 at 3:00 P.M. On that same date, Certificate and Articles of Limited Partnership of OKC Limited Partnership were signed and filed with the Secretary of State of Texas, whereby OKC contributed certain properties, which it decided was not in the best interest of its shareholders to sell prior to its liquidation, to the limited partnership composed of CKB & Associates, Inc., a Texas Corporation, and Box as general partners, and OKC as a limited partner. OKC then distributed its limited partnership interest among its shareholders, as a liquidating distribution.

It was not until May 12, 1981, that the OKC Corporation Liquidating Trust ("Trust") was formed. Under the terms, the sole purpose of the Trust was to liquidate the trust estate, composed of OKC's remaining assets and liabilities. The Trustee was not to engage in any business activities, even if deemed necessary for the protection of the trust estate. However, the Trustee assumed all liabilities and claims of OKC. In addition, an Amended and Restated Certificate and Articles of Limited Partnership were executed on that date.[1]

Plaintiff, Lone Star Industries, Inc. ("LSI"), a Delaware corporation with its principal place of business in Connecticut, filed this diversity suit against Charles Redwine, Trustee of the OKC Corporation Liquidating Trust, in June, 1982, seeking damages arising out of an alleged breach of a Dock Construction Contract ("construction contract") entered into between LSI and OKC on September 3, 1980. LSI had purchased OKC's Louisiana Cement Company cement manufacturing plant in New Orleans and had contracted with OKC to complete a dock facility under construction at that facility. Upon learning of the alleged insolvency of the Trust, plaintiff amended its complaint in September 1983, to add Charles Redwine, individually, Box, and the Partnership as parties defendant, seeking recovery of transferred assets from the dissolved corporation. In omitting OKC as a defendant, LSI argues that the Trust is the proper party to be named as defendant, due to the assignment of OKC liabilities contained in the Trust agreement; defendants readily agree that the Trust assumed OKC's liabilities under the construction contract, but argue that OKC remains an indispensable party to the action.

■ The Court rejects the contention that the Trust is the proper party against whom the breach of contract claim can be asserted. Whether this defect is considered as failure to name the proper party defendant, failure to join an indispensable party, or failure to state a claim upon which relief can be granted, (see footnote 1, supra) it can be raised by the Court *sua sponte* and affects its subject matter jurisdiction over this matter. *Johnson v. Boyd-Richardson Co.*, 650 F.2d 147, (8th Cir. 1981); *Kimball v. Florida Bar*, 537 F.2d 1305 (5th Cir.1976); 5 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 1357 (1969).

■ As a preliminary note, the Court holds that all questions involving OKC's actions in liquidation, and upon dissolution, as well as potential liabilities of transferees of its corporate assets, are governed by Delaware law. Corporations are creatures of state law; state law will govern the affairs of the corporation. *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26

---

**1.** The OKC Corporate resolution styled "Transfer of Assets and Liabilities to the OKC Liquidating Trust" purports to transfer the company's assets and liabilities to the Trust "... as of the close of business on May 5, 1981 ...", although the instrument creating the Trust is declared by its terms to be effective May 12, 1981. The Court does not reach the issue as to whether the transfer to the Trust failed for lack of a transferee in existence at the date of the transfer. However, for reasons more fully set forth hereinafter, the discrepancy in dates fortifies the Court's conclusions set forth hereinafter as to the necessity for OKC's presence in this litigation.

(1975). *See also: Speakman v. Bernstein,* 59 F.2d 520 (5th Cir.1932), cert. denied 287 U.S. 639, 53 S.Ct. 88, 77 L.Ed. 553 (1932). Because the Trust was created after OKC became dissolved under Delaware law, OKC's very power to assign rights and liabilities at that time is determined by Delaware law, the source of any afterlife it may have enjoyed. Under Delaware law, the corporate existence of a dissolved corporation can be extended only as statutorily specified in 8 Del.Code Ann. § 278 and § 279.[2]

■ The Delaware statutory scheme envisions two situations. Under § 278, the dissolved corporation has continuing legal existence and is capable of winding up its own affairs through its officers and directors, while prohibited from continuing the business for which it was organized, although it may "gradually settle and close" its business. Section 279 authorizes the Court of Chancery, on application of a creditor or stockholder, or some other person with "just cause" to designate a liquidating trustee or trustees (who may be directors) to conduct the liquidation of the corporation. This section is clearly designed to care for situations where the corporation, as such, through its directors, does not conduct the liquidation of the dissolved corporation; this section protects creditor or stockholder interests where the corporation fails to liquidate, or liquidation activities conducted by it would prejudice or otherwise adversely affect such creditor or shareholder interests. In these situations the Court of Chancery intervenes and appoints a receiver or trustee, who is permitted to do all acts which might be done by the corporation, if in being, that are necessary for the final settlement of its unfinished business. *In re Citadel Industries, Inc.,* 423 A.2d 500 (Del.Ch.1980).

While the Delaware Code sets forth a procedure for voluntary dissolution of a corporation which would seemingly permit pre-dissolution creation of a trust such as that envisioned in the Liquidating Trust Plan approved by OKC stockholders,[3]

**2.** Pertinent sections provide:

§ 278: All corporations, whether they expire by their own limitations or are otherwise dissolved shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the corporation shall, for the purpose of such actions, suits or proceedings be continued bodies corporate beyond the 3 year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery.

§ 279: When any corporation organized under this chapter shall be dissolved in any manner whatever, the Court of Chancery, on application of any creditor or stockholder of the corporation or on application of any one, who, in the Court's discretion, shows good cause therefor, at any time, may either appoint 1 or more of the directors of the corporation to be trustees, or appoint 1 or more persons to be receivers, of and for the corporation, to take charge of the corporation's property, and to collect the debts and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, and to appoint an agent or agents under them, and to do all other acts which might be done by the corporation, if in being, that may be necessary for the final settlement of the unfinished business of the corporation. The powers of the trustees or receivers may be continued as long as the Court of Chancery shall think necessary for the purposes aforesaid.

**3.** The section provides in pertinent part:

§ 275(a): If it should be deemed advisable in the judgment of the board of directors of any corporation that it should be dissolved, the board, after the adoption of a resolution to that effect by a majority of the whole board at any meeting called for that purpose, shall cause notice to be mailed to each stockholder entitled to vote thereon of the adoption of the resolution and of a meeting of stockholders to take action upon the resolution.

(b) At the meeting a vote shall be taken for and against the proposed dissolution. If a majority of the outstanding stock of the corpora-

OKC's activities post-dissolution are restricted by statute. Simply put, OKC's ability to act in its corporate capacity after being dissolved on May 11, 1981, when no Trust had been created, is subject to § 278 and § 279.

Thus, the companion Sections 278 and 279 clearly set forth only two alternative means of achieving liquidation of a dissolved corporation: first, the corporation proceeds to achieve liquidation in the corporate name through its existing officers and directors, or second, the liquidation is conducted by a court appointed trustee, under the continuing supervision of the Delaware Chancery Court. OKC apparently attempted to create yet a third. It created a Section 337 trust, to achieve the attendant tax advantages, with the "337 trustee" also empowered to act as a liquidating trustee. This it could not do, for without the sanction of court authorization, the liquidating powers and duties of the corporation, through its officers and directors, could not and were not vested in Mr. Redwine. That this dual capacity was sought to be achieved through the means of a transfer of corporate assets with an accompanying assumption by the Trust of corporate debts by way of a tax-structured device cannot override the clear mandate of Delaware law. Officers and directors of a corporation—even one in dissolution—owe a fiduciary duty to the corporation and its shareholders. While the Court has found no specific case in point as to whether a similar duty is owed by such persons to a dissolved corporation's creditors, it would seem one should exist. However, it would further seem clear that the duty to shareholders would at least be arguably breached by an attempt to pass a corporate liability on to a trust created for the benefit of shareholders where a serious issue as to the ability of the trust itself to either perform a contract, or respond in damages for its breach, is presented. In any event, Section 279 provides the sole means by which this burden may be shifted to other persons after dissolution and then only with court sanction and under court approval.

 No application or appointment of any trustee or receiver was made to the Court of Chancery. Without this judicial anointment, the corporation through its directors retained the sole power to liquidate the dissolved corporation. Thus, Mr. Redwine is without power to act on behalf of OKC under § 279 or to defend OKC or the Trust in the matter *sub judice;* likewise, any purported assumption of assets and liabilities by Redwine as a liquidation trustee, as opposed to a trustee of a Section 337 trust, is without effect. Therefore, LSI can pursue its claim for breach of contract against OKC only via § 278, wherein OKC's corporate capacity to sue and be sued is continued for a 3-year period following dissolution. Fed.R.Civ.Pro. 17(b). Under § 278, directors or stockholders do not become "statutory trustees." The only party who can be sued, and which remains liable for the corporate debt or liability, is the corporation itself. OKC, as a dissolved Delaware corporation, retains its Delaware citizenship for purposes of diversity jurisdiction. *Ross v. Venezuelan-American Independent Oil Producers Association, Inc.,* 230 F.Supp. 701 (D.Del.1964).

The defect created by nonjoinder of OKC as a party defendant can also be analyzed in terms of a failure to join an indispensable party. Under Fed.R.Civ.P. 19, where a party is deemed necessary for the Court to provide complete relief, yet its joinder will deprive the Court of jurisdiction over the subject matter, the Court must determine whether in equity and good conscience the action should proceed among the parties before the Court or be dismissed, giving consideration to four fac-

---

tion entitled to vote thereon shall vote for the proposed dissolution, a certificate stating that the dissolution has been authorized in accordance with this section and setting forth the names and residences of the directors and officers shall be executed, acknowledged and filed, and shall become effective, in accordance with § 103 of this title. Upon such certificate becoming effective in accordance with § 103 of this title, the corporation shall be dissolved.

\* \* \* \* \* \*

tors. *Ferguson v. Thomas*, 430 F.2d 852 (5th Cir.1970). The factors include the potential prejudice of a judgment rendered in the party's absence and the extent to which the court can lessen or avoid that prejudice, which understate the problem facing this Court if it were to proceed without the only party liable for the obligations under the construction contract. It is clear that a judgment rendered in OKC's absence will be totally inadequate, and that proceedings in the Delaware Court of Chancery may remain available to the plaintiff. This matter should be dismissed, OKC being regarded as indispensable.

Moreover, the Court notes that under Delaware law, judgment against the corporation must be obtained and execution thereon returned unsatisfied before officers, directors and stockholders shall be liable for a corporate debt.[4] The Court regards this requirement as substantive, not procedural. It is a statutory condition precedent to a claimant proceeding against a corporate transferee. *Bankers Trust Co. v. Hale & Kilburn Corp.*, 84 F.2d 401 (2d Cir.1936) (wherein a judgment creditor, with execution issued and returned unsatisfied proceeded against stockholder transferee). While Fed.R.Civ.P. 18(b) permits a plaintiff to maintain an action to set aside a fraudulent conveyance in federal court without reducing its claim to judgment, the debtor must be joined as a party defendant and is indispensable to the suit. *Armour & Co. of Dela. v. B.F. Bailey, Inc.*, 132 F.2d 386 (5th Cir.1942).

█ Plaintiff seeks to avoid the consequences of specifically alleging a fraudulent transfer by casting its claim against Box and the Partnership in the terms of same being "unlawful". The essence of a claim predicated on such an unlawful transfer is fraud. *McKee v. Standard Minerals Corp.*, 18 Del.Ch. 97, 156 A. 193 (1931); *Bankers Trust, supra.* Federal courts are not bound by the technical recitations in pleadings; they must examine the foundation of a claim, and should strip away the wrapping in which a claim is presented to examine the contents of the parcel. In this instance, LSI essentially claims that the "unlawful" transfer by OKC to Box and the Partnership resulted in the dissipation of corporate assets which would otherwise be available to satisfy corporate obligations, that such transfer resulted in prejudice to LSI's rights, and that LSI should therefore be permitted to proceed directly against the defendants in this action as beneficiaries of these "unlawful" transfers. The essence of this claim is a conveyance in fraud of creditors. It survives no other analysis. Fraud is present, as a matter of law, irrespective of the terms in which the claim is cast. Thus, the provisions of Rule 18(b) are triggered, and the debtor-transferor OKC must be joined.[5]

█ Alternatively, this Court holds that even if the assignment of OKC assets and liabilities to the Trust was effective, OKC's obligations under the construction contract are not assignable to the Trust. In this regard, the Court notes that no theory of liability against the Trust for breach of the construction contract has been presented which does not rely on the assumption and assignment contained in the Trust document. As such, the complaint against the Trust, not otherwise a party to the construction contract, necessarily fails to state

---

**4.** § 325: (a) When the officers, directors or stockholders of any corporation shall be liable by the provisions of this chapter to pay the debts of the corporation, or any part thereof, any person to whom they are liable may have an action, at law or in equity, against any 1 or more of them, and the complaint shall state the claim against the corporation, and the ground on which the plaintiff expects to charge the defendants personally.

(b) No suit shall be brought against any officer, director or stockholder for any debt of a corporation of which he is an officer, director or stockholder, until judgment be obtained therefor against the corporation and execution thereon returned unsatisfied.

**5.** This conclusion finds yet additional support in Paragraph 8 ("Contested Issues of Fact") of the parties' jointly prepared pre-trial order where, as to both defendants Box and the Partnership, the fact issues of OKC's intent to defraud LSI and the claim that OKC's transfer of assets to Box and the Partnership rendered OKC insolvent, are specifically presented.

a claim upon which relief can be granted. Likewise, no other named defendant either assumed OKC's obligations under the construction contract nor were parties thereto.

The construction contract provides that "OKC shall have the right after April 15, 1981, to assign its rights and obligations under this contract to any financially responsible party, provided such party assumes all obligations of OKC hereunder." However, the Trust cannot engage in any business. By its own terms, the Trust specifies that "This limitation shall apply irrespective of whether the conduct of any business activities is deemed by the Trustee to be necessary or proper for the conservation and protection of the Trust Estate."

Initially, the Court rejects the characterization of the Trust as a "financially responsible party," where, within six months after its inception, the Trust showed a cash flow deficit of over $10 million dollars and an excess of liabilities over assets of nearly a quarter of a million dollars. The dire financial straits of the Trust result from a major debtor, Basin Refining, Inc. ("Basin") seeking protection under Chapter 11 of the Bankruptcy laws on June 6, 1981, only twenty-five days after the Trust was created and allegedly assumed OKC's obligations under its construction contract with LSI. The Trust accountants' notes in the financial statement reflecting the foregoing show that the schedule of assets records values as of May 12, 1981—the date of the Trust's creation—and shows the relevant deficits exist as at that date. The Trust was clearly not a "financially responsible party" on the critical date. Its major asset, the Basin note, had become essential-ly uncollectable, as the Trust's accountants found and their report reflected. The Court must further observe that in point of fact, other properties which were contemporaneously transferred to the Partnership would have had a significant and favorable effect on the Trust's financial posture had they been included among "all" of the OKC assets funneled into the Trust.

Further, even if the Trust were considered financially responsible, it remained powerless to perform under the construction contract; such undertaking would necessarily involve prohibited "business activity." The limitation on assignment of rights and obligations contained in the construction contract cannot be read to permit any assignment of OKC's obligations to perform thereunder to a Trust which, by its very nature, could not perform and over whom no judicial supervision is enjoyed.[6] The limitation contained in the construction contract necessarily prevails over the blanket assumption contained in the Trust papers; it is part and parcel of the bargain reached between LSI and OKC at a time when a plan of liquidation had been adopted by OKC shareholders. As such, suit on the construction contract must be brought against OKC, a non-diverse party.

Accordingly,

IT IS ORDERED THAT C/A 82–2568 is DISMISSED for failure to join an indispensable party, or alternatively, for failure to state a claim.

---

**6.** The Trust's lack of power to engage in OKC business activity casts further doubt on its status as a "financially responsible party". Performance under the OKC-Lone Star Contract would certainly comprise an OKC "business activity". Since the Trust was prohibited by its own terms from such performance, it can hardly be argued that, as to such prohibited performance, the Trust was "responsible" at all. In addition, as reflected in the parties' pre-trial order, LSI claims that OKC was in default under its construction contract with LSI as of March 31, 1981, and the evidence indicates a notice of default letter sent by LSI to OKC under date of April 1, 1981. OKC was not dissolved until May 11, 1981, and it did not purport to assign its contract with LSI to the Trust until May 12, 1981. Pretermitting the issue of whether a contract in default can be assigned to a Section 337 liquidating trust under the guise of transferring an asset, this chronology of events fortifies the Court's conclusion that OKC's presence in this suit is indispensible to a full and fair litigation of the rights of the respective players involved in this fact-oriented scenario.